MARK BRNOVICH
Attorney General
Firm Bar No. 14000
Kara M. Karlson (029407)
Jennifer M. Perkins  (023087)
Assistant Attorneys General
1275 W. Washington Street
Phoenix, AZ  85007
Telephone (602) 542-4951
Facsimile (602) 542-4385
kara.karlson@azag.gov
jennifer.perkins@azag.gov
*Attorneys for Secretary of State Michele Reagan*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Democratic Party and the Democratic National Committee,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Michele Reagan, Secretary of State,<br><br>　　　　　　　Defendant. | Case No. CV-16-03618-PHX-SPL<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |

**INTRODUCTION**

Defendant Michele Reagan, Arizona Secretary of State, requests that this Court deny Plaintiffs' request for declaratory and injunctive relief for three reasons.  First, Plaintiffs' claims are unlikely to succeed on their merits because

1

this Court must dismiss the complaint due to procedural deficiencies and unjustified, prejudicial delay. Second, Plaintiffs' requested relief, itself, would cause irreparable harm. Third, the balance of the equities and the public interest do not favor injunctive relief.

## I. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In order to justify such extraordinary relief, a plaintiff must show "(1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). And, in every case, the Plaintiffs bear a heavy burden in attempting to show they are entitled to a preliminary injunction. *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015).

Furthermore, a request for a mandatory preliminary injunction (as Plaintiffs

seek here) should be denied "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). In this Circuit, "a mandatory injunction is particularly disfavored" and generally "are not issued in doubtful cases." *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011). Mandatory preliminary injunctions are especially disfavored in election law matters because they require significant shifting of funds and personnel or additional resources shortly before an election, which will impact the orderly administration of the election, cause voter confusion, and undermine the electorate's confidence in the election process. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006).

## II.   Plaintiffs Are Unlikely to Succeed on the Merits

Plaintiffs' requests cannot succeed on the merits. First, Plaintiffs' procedural deficiencies and delays render this action non-justiciable. Second, the claims themselves lack merit.

### A. Procedural Deficiencies and Unjustified, Prejudicial Delay by Plaintiffs Render This Action Non-Justiciable.

#### i. Plaintiffs neglected to include necessary parties.

Plaintiffs have not named the necessary defendants to obtain statewide relief relating to registration of voters. This Court should thus deny the requested relief under Federal Rule of Civil Procedure 19(a). *See, e.g.*, *Stevenson v. Blytheville School Dist. No. 5*, 955 F. Supp. 2d 955, 970 (E.D. Ark. 2013) (denying

preliminary injunction when the "Court does not have before it the parties necessary to grant through preliminary injunction the relief plaintiffs seek."). Rule 19(a) requires a party to be joined if feasible and if necessary to "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), or if the action may "as a practical matter impair or impede the [party's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B). Only one of these factors need be present; both are present here.

Plaintiffs identify the sole issue in this case as whether the Secretary of State violated federal and state law "in refusing to extend Arizona's voter registration deadline." [Motion at 2] This fails to recognize that the individual counties made the decisions at issue and are responsible for actions related to voter registration forms such as receiving and preserving them, A.R.S. § 16-163(A); *see also* A.R.S. § 16-161; communicating with potential registrants regarding incomplete registrations or electors regarding complete forms, A.R.S. § 16-163(B); verification of registrations, A.R.S. § 16-166(E); and preparation of precinct registers listing eligible voters in advance of primary and general elections, A.R.S. § 16-168(A). Further, the appointment of inspectors, marshals, judges, and clerks who serve on election or tally boards occurs at the county level. A.R.S. § 16-531(A). The county-appointed election board has the statutory authority to resolve

challenges to electors as ineligible. A.R.S. § 16-592. Yet, Plaintiffs have not named *any* county officials as defendants.

Plaintiffs' proposed mandatory preliminary injunction will directly impair the interests of the absent counties. Specifically and most significantly, Plaintiffs ignore that the counties—and not the State—would bear the administrative burden and expense of implementing such an injunction. The requested injunction would require the identification, review, and processing of all registration forms submitted between midnight on October 10, 2016, and midnight on October 11, 2016. Doc 1, Complaint at 10-11. As no County officials have been named there is no representative to articulate the magnitude of this administrative burden and expense, but initial communications with Maricopa County representatives indicate substantial burden and expense would be imposed by such an order on absent parties in contravention of Rule 19(a)(1)(B).

Nor can this Court award the "complete relief" that Plaintiffs seek given the fact that many of the tasks requested must be performed by county officials as noted above.[1] Simply, federal courts are "powerless" to issue injunctions against

---

[1] Plaintiffs' failure to name the necessary county election officials also prevents them from satisfying the redressability element of Article III standing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 568 (1992) ("The most obvious problem in the present case is redressability. Since the agencies funding the projects were not parties to the case, the District Court could accord relief only against the Secretary: He could be ordered to revise his regulation to require consultation for
5

non-parties. *Citizens Alert Regarding the Env't v. EPA*, 259 F. Supp. 2d 9, 17 n.7 (D.D.C. 2003).

Plaintiffs assume that the Arizona Secretary of State, the only party to Plaintiffs' claims, could somehow order the counties to perform the requested functions. The Secretary of State's August 25 email expressed a strong opinion regarding the proper deadline, and urged statewide uniformity. But, again, the counties enter data into the system rendering a person eligible to vote. As Plaintiffs' Complaint reveals, they demonstrated awareness of this issue by choosing initially to contact the counties directly and individually. Fifteen different counties provided fifteen different responses to that September 19 letter.

The Court should therefore deny the requested injunction.

### ii. Plaintiffs failed to abide by NVRA's notice requirement, a pre-requisite to this action.

Plaintiffs assert a violation pursuant to NVRA, but that statute requires that private individuals aggrieved by such a violation provide notice of the alleged violation to the State's chief election official before proceeding with a civil action. 52 U.S.C. § 20510(b). The alleged violation in this case is the Secretary of State's recommendation to counties that they set the voter registration deadline on October

---

foreign projects. But this would not remedy respondents' alleged injury unless the funding agencies were bound by the Secretary's regulation, which is very much an open question.")

6

10, 2016, despite that the day was a state holiday, and the final day of a three-day-weekend.  Doc 1, Complaint at ¶ 16.  That act occurred at the latest on August 25, 2016, when Election Services Director Eric Spencer issued notice of the Secretary of State's position regarding that deadline.  Ex. 25, Spencer Declaration.  Thus, the alleged violation occurred more than 30, but less than 120 days before the upcoming November 8, 2016, general election.

Under the federal statute, Plaintiffs were required to provide notice of the claimed violation a minimum of twenty days before filing this action.  52 U.S.C. § 20510(b)(2), *see also National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015) ("The statute includes a notice provision that requires an aggrieved person, in most circumstances, to notify state officials of possible violations of the statute before filing suit.").  A failure to provide sufficient statutory notice precludes Plaintiffs' requested relief under the NVRA.  *See Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) (noting that the NVRA's notice provision is mandatory and a plaintiff failing to meet the notice requirement lacks standing to pursue the civil action).

To satisfy the notice requirements of the NVRA, notices sent by private parties must include a clear articulation of the allegation of violation, coupled with both a warning of the potential for liability specifically under the NVRA via private enforcement action and identification of the communication as the

7

statutorily required notice. *See Cegavske*, 800 P.3d at 1035-36; s*ee also Cromwell v. Kobach*, --- F. Supp. 3d. ----, 2016 WL 4060260, *12 (D. Kan. July 29, 2016) (noting that the notice provision is mandatory, and a subsequently filed suit is permitted "as to the violations specified in the notice."). *C.f. ACLU v. Martinez-Rivera*, 166 F. Supp. 3d 779, 795 (W.D. Tex. 2015) (approving notice asserting that state law was in "violation of Section 8 of the National Voter Registration Act."); *Ga. State Conf. of NAACP v. Kemp*, 841 F.Supp.2d 1320, 1334 (N.D. Ga. 2012) (allowing suit by plaintiff who provided notice stating that certain "policies do not comply with the NVRA"). Moreover, a plaintiff pursuing a private enforcement action such as this one cannot "piggyback" on a notice provided by a separate party; rather, the plaintiff must himself have provided the operative notice to comply with the statute. *Scott*, 771 F.3d at 835-36 (holding an individual plaintiff could not rely on a notice provided by a separate entity to advance the individual's NVRA violation claims).

Here, Plaintiffs failed to provide the requisite notice of a potential NVRA violation. Instead, in their September 19, 2016, letter to the counties raising concerns about the October 10 registration deadline, Plaintiffs merely alleged that the deadline violated state law. Plaintiffs failed to even suggest a violation of federal law, much less allege a violation of the NVRA. In fact, the only evidence Plaintiffs offer of notice regarding a potential NVRA violation is the September 30

letter from Senators Schumer and Leahy, which (1) was not from these Plaintiffs, (2) was not addressed to this Defendant, (3) did not provide an analysis of the legal argument, (4) did not warn the State of potential liability under the private enforcement mechanism, and (5) did not identify itself as the requisite statutory notice.  Indeed, as of October 8 Plaintiffs' witness and Arizona Democratic Party Voter Protection Director Spencer Scharff *denied* any litigation on this issue was imminent. Ex. 26, Washington Post Article.

Plaintiffs are precluded from filing suit because their September 19 letter plainly failed to provide the requisite notice under the NVRA, and they may not "piggyback" on the Senators' September 30 letter to satisfy the NVRA's notice requirement.  Plaintiffs thus lack standing to pursue their NVRA violation claim.

### iii.  Plaintiffs' Delay Renders This Action Barred by Laches

Plaintiffs' injunctive relief claim is barred under the doctrine of laches. Courts have "repeatedly cautioned that litigants should bring election challenges in a timely manner or have their requests for relief denied on the basis of laches." *Ariz. Libertarian Party v. Reagan*, No. CV-16-01019-PHX-DGC, __ F. Supp. 3d __, 2016 WL 3029929, at *2 (D. Ariz. May 27, 2016); *see also Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (affirming dismissal of complaint for laches). Laches applies when there is "unreasonable delay and prejudice."  *Ariz. Libertarian Party*, 2016 WL 3029929, at *2.  To determine whether delay is

9

unreasonable, courts consider "the justification for the delay, the extent of the plaintiff's advance knowledge of the basis for the challenge, and whether the plaintiff exercised diligence in preparing and advancing his case." *Id.* at *3. When assessing prejudice, courts consider "prejudice to the courts, candidates, citizens who signed petitions, election officials, and voters." *Id.*

Plaintiffs' delay is unreasonable. First, the Secretary of State issued notice of the October 10 deadline on August 25, 2016, and Plaintiffs knew about the Secretary of State's position regarding the voter registration deadline by at least September 19, 2016, s*ee* Exh. 12, or a full month before filing this action. Plaintiffs have offered no justification for the delay. Second, Plaintiffs had more than adequate advance knowledge of the basis for the challenge as is evidenced by their letters to counties in mid-September, and the responses received as early as September 22 confirming the deadline.

Finally, Plaintiffs have not exercised diligence in preparing and advancing this case, delaying almost a month in filing the substantial pleadings, resulting in the prejudicially short time frame for the Secretary of State to draft this response and prepare her appearance at an emergency "trial on the merits in this action." Doc 8, at 2. There is clearly insufficient time for the Secretary of State "to fully develop facts and arguments for the Court to assess in ruling on whether to grant Plaintiff's request for [] relief." *Ariz. Libertarian Party*, 2016 WL 3029929, at *4

(internal quotes omitted).

"More importantly, [Plaintiff's] delay has prejudiced the administration of justice." *See id.* Twenty days—the time between the date of this filing and the date of the general election—is insufficient under the circumstances "to obtain briefing, hold a hearing, evaluate the relevant constitutional law, . . . and advise the Secretary [how to proceed]." *Id.* Granting injunctive relief at this late stage requires the Court to "steamroll through delicate legal issues in order to meet election deadlines." *Id.* at *3 (internal quotes and alterations omitted).

### B. Plaintiffs' Asserted Violations Lack Merit

#### i. Compliance with the October 10 deadline did not impermissibly burden voting rights.

This claim requires this court to apply a "flexible standard" that "weigh[s] the character and magnitude of the asserted injury . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Pub. Integrity All., Inc. v. City of Tucson*, No. 15-16142, 2016 WL 4578366, at *3 (9th Cir. Sept. 2, 2016) (en banc) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)) (internal quotations omitted; alteration in original). Under this framework, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (quoting *Burdick*, 504 U.S. at 434) (internal quotations omitted). Plaintiffs'

11

asserted injury relates to the as-yet unidentified pool of potential voters who delayed submitting their registration until October 11, failing to heed numerous public warnings regarding the October 10 deadline or to take advantage of the alternative registration options available through the holiday weekend. The Secretary of State does not take lightly that there may be Arizonans who wish to vote on November 8, and are otherwise eligible to do so, but who ineligible based on a failure to register by the statutory deadline.. However, this concern must be measured against the State's interests in maintaining its deadline.

The State's interests in adhering to the statutory and publicly noticed deadline are significant. First, changing the deadline at this stage—well after it has passed—will undermine public confidence in the integrity of this election. This is particularly so given Plaintiffs' decision to significantly delay pursuing this action.

Second, this deadline does not occur in a vacuum, rather it is part of a complex election system involving numerous, interrelated deadlines. The twenty-nine day registration deadline allows a full two day period before early voting begins, which is statutorily set at twenty-seven days before Election Day. A.R.S. § 16-542(C). That two-day window is the time in which county officials prepare for the advent of voting. Plaintiffs' initial request to counties would have cut that preparation time by 50%. Whether such a deadline change should similarly alter the first day of early voting is something for the Legislature to address, after an

opportunity to consider the input of all stakeholders.

Third, for voters that request ballots at least thirty-one days before the election, (here on or before October 8), including those on the permanent early voting list, counties must mail out early ballots between twenty-seven and twenty-four days before the election (or between Wednesday, October 12, and Saturday, October 15). A.R.S. § 16-542(C). Moving the voter registration deadline to October 11 would prevent counties from shifting a significant portion of their employees to focus on this ballot mailing deadline. When properly registered voters request an early ballot within twenty-seven days of the election, county recorders must mail the ballot within 48 hours of the request. A.R.S. § 16-542(D). Timing is crucial here and requiring this change could well result in a violation of the mailing deadlines. Again, the Legislature is well-suited to consider the interplay of these complex election mechanisms.

### ii.  Arizona law required an October 10 deadline.

Plaintiffs' arguments under Arizona law are, at best, incomplete. First, Plaintiffs rely on the state's general provision that functions to be performed on a particular day may be performed the next business day where the statutory deadline falls on a holiday, A.R.S. § 1-303, and attempt to distinguish the relevant Arizona Supreme Court precedent. In *Board of Supervisors of Maricopa County v. Superior Court of Maricopa County*, 103 Ariz. 502 (1968), the Court held that

election statutes using "not less than [X] days" terminology to set a deadline must be strictly construed even when doing so would cause the deadline to fall on a weekend. *Id.* at 504. Notably, this decision occurred *after* the 1958 AG Opinion on which Plaintiffs rely, and thus to the extent they conflict the Court's opinion controls. Further, Plaintiffs' attempt to cabin the applicability of the *Board of Supervisors* opinion suggesting it only applies to the ballot-printing context. The Supreme Court did not limit its opinion in that fashion, but rather noted that its analysis rested on the practical concerns presented in the ballot-printing context. As set forth above, similar practical concerns are at issue in this situation and cannot be ignored.

Plaintiffs' reliance on *Dedolph v. McDermott* is inapposite. There, the Supreme Court dealt with an election challenge statute with explicit language excluding weekends and holidays from the operative deadline. 281 P.3d 484, 486 (2012). There is no such language in the voter registration statute.

Further, application of § 1-303 in the context of this particular holiday would result in inconsistent registration deadlines throughout the state. This is because counties have the option not to observe a holiday on the second Monday in October and instead observe a holiday on the Friday after the fourth Thursday in November. A.R.S. § 11-413(A). Counties that select this option were open on October 10, and thus would be required to impose a voter registration deadline on

14

that day as § 1-303 would have no effect. Those counties observing the Columbus Day holiday, in contrast, were closed and under Plaintiffs' read would have a different registration deadline. In other words, Plaintiffs cannot rely on this general statutory provision to move the deadline on a statewide basis.[2]

Moreover, the county-by-county deadline patchwork resulting from Plaintiffs' articulation of Arizona law likely raises equal protection concerns: voters' enfranchisement would differ based solely on their county of residence.

There are also practical technical impediments to moving the registration deadline to October 11. Thirteen of Arizona's fifteen counties use the State's Power Profile voter registration database to control their election processes. Ex. 25, Spencer Declaration. These counties cannot create and print precinct registers for Election Day except through Power Profile. The program requires the Secretary of State's office to initiate each election by setting up various specific parameters including the "books closed date" after which any registrations received are automatically prevented from voting eligibility. There can only be one "books closed date" in the program; it does not allow for patchwork dates on a county-by-county basis. That date has already been set so any Power Profile county

---

[2] Plaintiffs point to the previous administration's decision in 2012, when the last day for registration also fell on Columbus Day, to extend the deadline. They fail to note that earlier administrations in 2000 and 2006 declined to extend, maintaining the statutory deadline on the holiday. *See* Exs. 27-28, 2000 and 2006 Election Procedures Manual Excerpts.

purporting to allow registrations marked October 11 can only do so by falsifying the voter record in the program to reflect submission on October 10.

Patchwork county-by-county deadlines also would render attempts to properly notify the public of the registration deadline impracticable. No statewide notices could be provided absent detailed caveats, and those citizens who live in one county but are in the media market of another county may receive apparently conflicting information leading to voter confusion.

## III. Plaintiffs' Requested Injunction Would Itself Cause Irreparable Harm.

Election officials at the state and county level went to great lengths to notify the public of the October 10 registration deadline. Ex. 25, Spencer Declaration. Such notice included: the Secretary of State's online election calendar, published 10-12 months before the election; the Secretary of State's publicity pamphlet issued in August; the Motor Vehicle Department's ServiceArizona.com website; Clean Elections Commission materials, including billboards and television/radio advertisements; counties' election websites and mailings; and social media posts and responsive emails and telephone calls by election officials at all levels.

While Plaintiffs highlight the potential harm to those individuals who failed to heed these substantial public notices, they fail to recognize those unidentifiable individuals who declined to register on October 11 given the passage of the deadline. Changing the rules well after the deadline would upset those individuals'

16

reliance on the public notices they received. This further underscores the problems with Plaintiffs' delay—at a minimum had Plaintiffs should have filed their legal action prior to October 10 to avoid this particular issue.

Plaintiffs' articulated harm also fails to sufficiently account for the alternative methods of registration that remained available on October 10. If the harm alleged is truly irreparable because these alternative means were insufficient, that harm is entirely a creation of Plaintiffs' own making due to their delay in pursuing this action.

## IV. The Balance of the Equities and the Public Interest Do Not Favor a Preliminary Injunction.

In a claim against the government, the public interest merges with the balance of the equities. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of the equities and the public interest do not support Plaintiffs' delayed, last-minute attempt to expand their own party's voter base. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S.Ct. 1, 3 (2012) (internal quotation marks and citation omitted). That harm is particularly acute here because the "State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). The Ninth Circuit has therefore held that the "law recognizes that election cases are different from ordinary injunction cases," because "hardship falls not only upon the putative

17

defendant, the [Arizona] Secretary of State, but on all the citizens of [Arizona]." *Sw. Voter Registration Educ.*, 344 F.3d at 919.

The Court should also consider the Plaintiffs' delay under this factor. *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012). Plaintiffs' delay causes unquestionable harm. Most Arizona counties (who are not parties to this litigation, and thus outside the Court's current jurisdiction) will have to scramble to implement Plaintiffs' relief and may choose not to do so. If they comply, they will have to do so without the time or money necessary to achieve the requested ends.

As noted above, the voter registration deadline set for October 10, 2016, was widely reported; state and county officials made every effort available to ensure public awareness. A change now, imposed by a federal court at the behest of partisan Plaintiffs who chose to delay filing their action until well after the registration deadline would severely undermine voter confidence in the state's election system.

## V. Conclusion

For the foregoing reasons, Plaintiffs' Motion should be denied.
RESPECTFULLY SUBMITTED this 21st day of October, 2016.

                                   MARK BRNOVICH
                                   Attorney General

                                   By: s/ Jennifer M. Perkins

Kara Karlson
Jennifer M. Perkins
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona 85007
*Attorneys for Secretary of State
Michele Reagan*

3

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of electronic filing to the EM/ECF registrants.

                                          s/ Maureen Riordan

#5393508