Kevin J. Hamilton (Wash. Bar No. 15648)
KHamilton@perkinscoie.com
(Admitted *Pro Hac Vice*)
Marc Erik Elias (D.C. Bar No. 442007)
MElias@perkinscoie.com
(*Pro Hac Vice* Application To Be Filed)
**PERKINS COIE, LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, District of Columbia 20005-3960
Telephone:  202.654.6200
Facsimile:   202.654.6211
DocketPHX@perkinscoie.com

Sambo Dul (Bar No. 030313)
Alexis E. Danneman (Bar No. 030478)
Thomas D. Ryerson (Bar No. 028073)
**PERKINS COIE, LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:   602.648.7000
SDul@perkinscoie.com
ADanneman@perkinscoie.com
TRyerson@perkinscoie.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Democratic Party and The Democratic National Committee, | No. 2:16-cv-03618-SPL |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |
| v. | |
| Michele Reagan, Secretary of State, | |
| Defendant. | |

133337856.5

1    Plaintiffs respectfully submit that the Court should grant the motion and enter a

2    permanent injunction. The actions of the Arizona Secretary of State, Michele Reagan

3    ("Defendant" or "Secretary"), are contrary to both the National Voter Registration Act

4    ("NVRA") and established state law, *and* unconstitutionally burden Arizonans'

5    fundamental right to vote. As a result, thousands of Arizonans will be wrongfully

6    disenfranchised in the election on November 8, 2016 (the "November 8 Election")

7    without the relief from this Court sought by the Arizona Democratic Party ("ADP") and

8    the Democratic National Committee ("DNC").

9                                      **ARGUMENT**

10   **I.    DEFENDANT VIOLATED STATE AND FEDERAL LAW IN SETTING
11          THE VOTER REGISTRATION DEADLINE ON OCTOBER 10, 2016.**

12        **A.    DEFENDANT VIOLATED THE NVRA**

13             **1.    Defendant Does Not Dispute That She Violated, And Continues
                       to Violate, the NVRA**

14        Defendant nowhere substantively responds to Plaintiffs' NVRA claim. The silence

15   is deafening. As Defendant all but concedes, she violated the NVRA by setting the voter

16   registration deadline on a federal and state holiday, and she continues to violate the

17   NVRA by enforcing that deadline, prohibiting those who registered on October 11 from

18   voting in the November 8 Election. Defendant's NVRA violations prevented Arizonans

19   from registering through NVRA-mandated methods in the timeframe provided by the

20   NVRA and threatens to wrongfully disenfranchise *at least* 2,069 voters who registered on

21   October 11. [*See* Plaintiffs' Emergency Motion for a Temporary Restraining Order and/or

22   Preliminary Injunction (Dkt. 2) ("Motion for TRO") at 6-7; 10/21/2016 Permanent

23   Injunction Hearing Exhibit ("Hr'g Ex.") 25 (Declaration of Eric Spencer ("Spencer

24   Decl.")) ¶ 17 & n.1 (noting that five counties have yet to submit final voter registration

25   numbers)]

26             **2.    Plaintiffs Complied With the NVRA's Notice Provisions**

27        Rather than defend her actions on the merits, Defendant instead retreats to arguing

28   that Plaintiffs failed to provide her with required notice under the statute. The argument

1   fails for three independently sufficient reasons. First, no notice is required for violations
2   within 30 days of an election. Second, Defendant's refusal to ensure that those who
3   registered on October 11 may vote in the upcoming election constitutes an ongoing
4   violation, for which no notice is required. Third, Defendant received adequate notice of
5   the basis of the violation and, despite ample opportunity to cure, has continued to wrongly
6   insist that she was bound to the October 10 deadline and that those who registered on
7   October 11 may not vote in the upcoming election. In the face of such repeated refusal to
8   comply with the NVRA, any further notice would have been futile.

9
10              **a.     Notice Was Unnecessary Because Defendant's Violation
                         Occurred Within 30 days of the November 8 Election**

11              While the NVRA requires notice under most circumstances, it explicitly states that
12   if the violation occurred within 30 days of a federal election, notice is unnecessary before
13   bringing suit. *See* 52 U.S.C. § 20510(b)(3). Here, Defendant claims the violation occurred
14   when "Election Services Director Eric Spencer issued notice of the Secretary of State's
15   position regarding [the] deadline" on August 25, 2016. [Defendant's Response to Motion
16   for TRO (Dkt. 14) ("Resp.") at 7] But Defendant herself insists that Mr. Spencer's
17   August 25 notice merely "expressed a strong opinion" as to what the deadline should be.
18   [*Id.* at 6] Mohave County, in fact, defied her "strong opinion" and extended its registration
19   deadline. Accordingly, Plaintiffs can hardly be faulted for taking the Secretary's position
20   as an "opinion" rather than "directive." Nor can Plaintiff ADP be faulted for continuing to
21   focus its efforts on reaching an out-of-court resolution rather than threatening litigation.

22              Indeed, it is undisputed that, on September 19, ADP's Voter Protection Director,
23   Spencer Scharff, "contact[ed] the counties directly and individually" about the registration
24   deadline. [*Id.*; 10/21/2016 Reporter's Transcript of Proceedings, Permanent Injunction
25   Hearing ("Hr'g Tr."), Testimony of Spencer Scharff ("Scharff Test.") at 22:11-24:18]
26   Mr. Scharff also sent Mr. Spencer a copy of his letter to county recorders (Scharff Test. at
27   22:15-22; *see also* Hr'g Ex. 25 ¶ 8), and made multiple attempts to meet with Mr. Spencer
28   about the deadline. [Hr'g Tr., Testimony of Eric Spencer ("Spencer Test.") at 94:1-96:8;

Hr'g Ex. 20] ADP's efforts to get Defendant to extend the deadline continued up to and including the deadline date of October 10, when counsel for ADP sent Defendant a letter, again, requesting an extension. [Spencer Test. at 96:9-20, 98:10-99-18; Hr'g Ex. 21; Scharff Test. at 117:18-24] In response, Mr. Spencer again refused to extend the deadline. [Hr'g Ex. 22] In short, Defendant's failure to prospectively extend the deadline did not become certain until October 10th—29 days before the election. This falls within 30 days of the upcoming election and, as a result, no pre-suit notice was required under the NVRA.

**b.      Notice Was Unnecessary Because Defendant's Refusal to Ensure That Those who Registered on October 11 May Vote in the Upcoming Election is an Ongoing Violation**

In any event, no notice was required because Defendant is engaging in an ongoing, systemic violation of the NVRA. As the Ninth Circuit has explained, "[a] plaintiff can satisfy the NVRA's notice provision by [showing] that a[n] ongoing, systematic violation is occurring at the time the notice is sent or, *if no notice is sent, when the complaint is filed within 30 days of a federal election*." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044 (9th Cir. 2015) (emphasis added). That is precisely the case here.

Independent of Defendant's not prospectively extending the deadline, Defendant's refusal to ensure that those who *did* register on October 11 may vote on November 8 is an ongoing violation as contemplated by *Cegavske*. *See* 52 U.S.C. § 20507(a)(1)(A)-(D) (requiring each state to "ensure that any eligible applicant is registered to vote in an election" if a valid registration form is submitted via one of the NVRA-mandated methods, within the NVRA-mandated time period). Because Defendant is "violating the statute within 30 days of a federal election, [Plaintiffs] were not required to give the State any prior notice . . . or opportunity to cure." *See Cegavske*, 800 F.3d at 1043.

**c.      Even if Notice Were Required, It Was Adequately Provided and Further Notice Would Have Been Futile**

Finally, notice beyond what Plaintiffs did provide is not required where the record makes clear that such notice would have been futile. The purpose of the NVRA notice requirement is to allow those violating the NVRA "an opportunity to attempt compliance

1  before facing litigation." *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Miller*, 129

2  F.3d 833, 838 (6th Cir. 1997). Here, there is no dispute that Plaintiffs informed Defendant

3  that the October 10 deadline fell on a federal and state holiday, during which popular

4  methods of registration were unavailable because MVD and post offices would be closed.

5  [Resp. at 6-7; Scharff Test. at 22:11-24:18, 117:18-24; Hr'g Ex. 25 ¶ 8; Spencer Test. at

6  96:9-20, 98:10-99-18] Plaintiffs' notice provided Defendant ample opportunity to extend

7  the deadline in order to come into compliance with the NVRA, the requirements of which

8  Defendant was well aware. [*See* Spencer Test. at 88:7-89:5][1]

9      Further, despite extensive efforts by ADP, and ample opportunity available to

10 Defendant to rectify the problem, Defendant has continued to wrongly insist that she was

11 bound to the October 10 deadline and that those who registered on October 11 may not

12 vote in the November 8 Election. Tellingly, Defendant has not argued, and nothing in the

13 record even remotely suggests, that Defendant would have cured her violation if only

14 Plaintiffs had more precisely spelled out how Defendant's conduct violated the NVRA. In

15 the face of Defendant's repeated and continued refusal to comply with the NVRA, any

16 further notice would have been futile. *See ACORN*, 129 F.3d at 838 (where state received

17 notice of violation and made clear that it had no intention of remedying the violation,

18 requiring further notice would "amount[] to requiring performance of futile acts").

---

21  [1] In a comparable context, courts interpreting A.R.S. § 12-821.01, which requires pre-suit notice of claims against public entities, have held that failure to specify the statutory provision or legal theory does not render notice deficient where the notice "apprise[s] the public entity of the basis of liability." *Iglesias v. City of Goodyear*, No. CV 11-01891-PHX-FJM, 2012 WL 3638752, at *2 (D. Ariz. Aug. 24, 2012); *see also Armstrong v. Town of Huachuca City*, No. CV 11-790-TUC-CKJ, 2012 WL 3962764, at *5 (D. Ariz. Aug. 7, 2012) (similar); *see also Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980) (in analyzing the federal notice of claim statute, 28 U.S.C. § 2675, noting that the court rejected the Government's suggestion that claimants must state their "legal theory for recovery"). This is particularly true where, as here, Defendant has been designated as the state's "Chief Elections Officer" pursuant to the NVRA, (Spencer Test. at 89:6-18), and is assisted by a highly experienced election lawyer serving as her Director of Elections and "de facto General Counsel." [Spencer Test. at 87:25-91:4] Defendant can hardly claim ignorance of the NVRA and, in fact, nowhere claims not to be aware of the statute or its unambiguous requirements. This is a remarkable, if silent, admission.

**B.** **DEFENDANT'S REFUSAL TO EXTEND THE REGISTRATION DEADLINE TO OCTOBER 11 UNCONSTITUTIONALLY BURDENED THE RIGHT TO VOTE**

Regardless of the merits of the NVRA claim, Defendant's refusal to extend the registration deadline and continuing refusal to permit those who registered by October 11 to vote in the November 8 Election impermissibly burdens the fundamental right to vote. *Wash. State Grange v. Wash State Republican Party*, 552 U.S. 442, 451 (2008). Under the Supreme Court's standard in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), courts weigh: (1) "'the character and magnitude of the asserted injury to [plaintiff's] rights' . . . against" (2) "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Defendant's looming disenfranchisement of *at least* 2,069 voters plainly involves the deprivation of a fundamental right for thousands of Arizonans. [Hr'g Ex. 25 ¶ 17)]

Not one of the Secretary's identified interests justifies this severe burden. While the Secretary identifies administrative burdens and inconvenience in its Response (at 12-13), the evidence adduced at trial makes clear that any administrative burdens would be easily manageable. [*See* Hr'g Tr., Testimony of Mary Fontes ("Fontes Test.") at 115:8-21 (noting that it would be "possible" to reassign staff to process the October 11, 2016 registrations, as they were already "dealing with post October 10 registrations")] Indeed, the burdens identified in Mr. Spencer's declaration are entirely speculative, unsupported by any such testimony or evidence from those very election officials. [*See, e.g.*, Hr'g Ex. 25 ¶ 22 ("*potentially* inhibits elections officials' ability to timely comply with last-minute early ballot requests"); *id.* ¶ 24 ("*could* inhibit the County Recorders' ability to comply with other statutory requirements"); *id.* ¶ 25 ("would be in *jeopardy* of missing" the "books closed date") (emphasis added)].

At bottom, "even one disenfranchised voter—let alone several thousand—is too many." *League of Women Voters of N.C. v. North Carolina* ("LOWV"), 769 F.3d 224,

244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015). This disenfranchisement is a "severe" restriction, which is in no way "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992).

### C.   DEFENDANT VIOLATED ARIZONA LAW

Finally, and perhaps most remarkably, setting the voter registration deadline on October 11, 2016 was inconsistent with state law and prior practice. State law provides, in relevant part that, voter registrations must be "received by the county recorder . . . prior to midnight of the twenty-ninth day preceding the date of the election." A.R.S. § 16-120. This year, that fell on October 10, 2016, a state and federal holiday. Thus, the deadline should have been moved to October 11. *See* A.R.S. § 1-303 (providing that, for "anything of a secular nature," when the deadline "falls on a holiday, it may be performed on the next ensuing business day with effect as though performed on the appointed day"). This is consistent with long-standing Arizona authority. [*See* Hr'g Ex. 1 (Ariz. Att'y Gen. Op. 58-74 (1958)) (concluding that when the close of voter registration fell on July 4th, A.R.S. § 1-303 required the registration deadline to occur the next day)]

This conclusion is also fully consistent with the 1968 Arizona Supreme Court opinion in *Board of Supervisors of Maricopa County. v. Superior Court of Maricopa County*, 103 Ariz. 502, 504, 446 P.2d 231, 233 (1968). First, the Court there determined that it could not provide effective relief to petitioners seeking last minute changes to primary ballots, focusing on the practical concerns that ballots were already being printed and there would be no time for printers to make any changes in any event. These concerns drove the Court's conclusion regardless of its additional observations about compliance with statutory time limitations, thus rendering those observations dicta with no binding force. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (noting that *dicta* are any statements "not necessarily involved in the case" and thus "without force of adjudication").

But even if these observations were somehow considered not dicta, the case is plainly distinguishable. The statute at issue in that case contained the additional, emphatic

1    words "*not less than* thirty days prior" to the election, and the Court focused on these

2    words in deciding that the statutory time limit should be categorically enforced (i.e.,

3    notwithstanding A.R.S. § 1-303). *Bd. of Supervisors*, 103 Ariz. at 504, 446 P.2d at 233

4    (emphasis added). The statute at issue in this case, A.R.S. § 16-120, contains no such

5    emphatic phrasing that would evince legislative intent to disregard the applicable terms of

6    A.R.S. § 1-303. Instead, it contains only a date prior to the election on which voting

7    registration is to close. This is "precisely the kind of time limit to which" A.R.S. § 1-303

8    applies. *Fisher v. City of Apache Junction*, 200 Ariz. 484, 486, 28 P.3d 946, 948 (App.

9    2001); *see also id.* at 485, 28 P.3d at 947 (A.R.S. § 1-303 applies to a requirement that a

10   statement be issued "[w]ithin ten calendar days").

11        Defendant complains that application of A.R.S. § 1-303 would result in a

12   "patchwork" of voter registration deadlines due to the existence of A.R.S. § 11-413(A).

13   [Resp. at 15] But the argument is plainly wrong. The cited provision provides that "for *the*

14   *purposes of opening county offices* for the transaction of business," counties can decide

15   whether to open their offices on either Columbus Day or the Day after Thanksgiving.

16   A.R.S. § 11-413(A) (emphasis added). Whether county offices are open or not is

17   irrelevant to whether Columbus Day is a statewide "holiday" for the purposes of A.R.S.

18   § 1-303. And it most certainly does nothing to prevent the State from articulating a

19   uniform, statewide registration deadline of October 11, 2016.[2]

20   ## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF.

21        The Defendant's refusal to allow the (at least) 2,069 people who registered on

22   October 11 to vote in the November 8 Election is the essence of irreparable harm. *See*

23   *LOWV*, 769 F.3d at 247 ("Courts routinely deem restrictions on fundamental voting rights

24   irreparable injury."); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

25   ---

26   [2] Moreover, Defendant's purported concern about "patchwork" consequences is
     unpersuasive where, on Defendant's mandated deadline of October 10, the holiday
     prevented voters from using popular registration options and statewide differences *already*
27   *existed* (i.e., due to some county offices being open on Columbus Day). [*See* Spencer
     Test. at 91:5-17 (noting separate deadline of Mohave County)] And, as Defendant has
28   admitted, the injunction Plaintiffs request would fully address that problem. [*Id.*]

("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (citation omitted). Defendant does not dispute this. Instead, Defendant's response is that Plaintiffs and their constituents were not harmed due to her outreach and publication of the October 10, 2016 deadline. [Resp. at 16] But, plainly, this outreach was ineffective for *at least* the 2,069 individuals who registered on October 11.

The Secretary also argues that the requested injunction would, in fact, cause "irreparable harm" to those voters who declined to register on October 11, "given the passage of the deadline." [*Id.*] But such voters would suffer no further harm as a result of the injunction, as they remain unable to vote in the upcoming election whether or not the Court grants relief here. Even assuming that such voters would be "upset," such speculation does not constitute irreparable harm. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."). Moreover, that the Secretary's unlawful refusal to prospectively extend the deadline prevented many Arizonans from registering on October 11 hardly justifies wrongly disenfranchising those who *did* register on October 11.

**III.    BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF.**

"The public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights.'" *Ariz. Dream Act Coal. v. Brewer*, 818 F.3d 901, 920 (9th Cir. 2016) (alteration in original) (citation omitted). This is even more so where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote,'" and in "'permitting as many qualified voters to vote as possible.'" *LOWV*, 769 F.3d at 247-48 (citations omitted). The 2,069 people (at least) who registered on October 11, 2016 stand to lose the fundamental right to vote in the November 8 Election.

This injury is not outweighed by interests of and relatively minor administrative burdens identified by the State in this case. The State, of course, "has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). But, it certainly has no legitimate interest in upholding unconstitutional or

1    otherwise unlawful laws. *See United Food & Commercial Workers Local 99 v. Bennett*,

2    934 F. Supp. 2d 1167, 1216-17 (D. Ariz. 2013) ("Defendants would suffer no harm in

3    being enjoined from enforcing unconstitutional . . . laws, so the balance of hardships tips

4    in favor of the Plaintiffs."). Moreover, Defendant has offered *no* concrete evidence that

5    any significant administrative burden in allowing the more than 2,069 voters that

6    registered on October 11, 2016 to vote in the November 8 Election would cause

7    irreparable harm. Instead, Defendant's own witness conceded that it was possible to

8    reassign staff to process the October 11 registrations. [Fontes Test. at 115:8-21]

9    **IV.   PLAINTIFFS INCLUDED THE ONLY NECESSARY PARTY, AS
10          DEFENDANT IS ARIZONA'S "CHIEF STATE ELECTION OFFICER"**

11        Defendant next argues that Plaintiffs should have named every county in Arizona

12   as a defendant to this lawsuit because: (a) Defendant cannot provide the relief Plaintiffs

13   want, and (b) the requested relief "will directly impair the interests of the absent counties."

14   [Resp. at 3-6] Both arguments fail.

15        Joinder is required if, "in that person's absence, the court cannot accord complete

16   relief." Fed. R. Civ. P. 19(a)(1)(A). "An entity's status as a 'necessary' party . . . 'can only

17   be determined in the context of particular litigation.'" *White v. Aurora Loan Servs. LLC*,

18   No. CV 14-1021-PHX-JAT, 2015 WL 1508413, at *2 (D. Ariz. Mar. 31, 2015) (citation

19   omitted). Here, Defendant is empowered by law to provide the relief Plaintiffs seek. The

20   NVRA requires each State to "designate a State officer or employee as the chief State

21   election official to be responsible for coordination of State responsibilities under this

22   chapter." 52 U.S.C. § 20509. In Arizona, that person is the Secretary of State. A.R.S.

23   § 16-142(A)(1). [*See also* Spencer Test. at 89:6-18 (Defendant is the "Chief Elections

24   Officer" for the purposes of the NVRA.)][3]

25        Given that the NVRA sets deadlines for the elections of federal officials, 52 U.S.C.

26   § 20507(a)(1), it is plainly inconsistent to name Defendant as Arizona's chief NVRA

27        [3] Defendant has not designated that responsibility elsewhere. *See* Ariz. Secretary
28   of State: Elections, http://www.azsos.gov/elections (last visited Oct. 23, 2016) ("The
     Secretary of State serves as the chief election officer in the state of Arizona.").

officer, and also claim she cannot enforce NVRA-compelled registration deadlines. Numerous courts have rejected the view that the chief NVRA official can abdicate their obligations. *See Harkless v. Brunner*, 545 F.3d 445, 452-53 (6th Cir. 2008) (designated official must have authority to enforce the NVRA, otherwise "every state [could] pass[] legislation delegating NVRA responsibilities to local authorities, [and] . . . be completely insulated from any enforcement burdens"); *see also Scott v. Schedler*, 771 F.3d 831, 838 (5th Cir. 2014) ("[B]oth the Eighth Circuit's and the Sixth Circuit's interpretations of the NVRA provide the chief election official with authority to enforce the NVRA with respect to state agencies."); *United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008) (reversing the district court's holding that Missouri's Secretary of State was not proper party due to lack of enforcement authority).[4] In short, Defendant can most certainly ensure the relief sought by Plaintiffs and the suggestion to the contrary is, frankly, absurd.[5]

Defendant's second argument fares no better. Joinder is required if disposing the litigation without the person would "impair or impede the person's ability to protect [their] interest." Fed. R. Civ. P. 19(a)(1)(B). Defendant argues that this rule requires joinder of the counties, as "there is no representative [of the counties] to articulate the magnitude of this administrative burden and expense." [Resp. at 5] This claim again rings hollow in "the context of particular litigation." *White*, 2015 WL 1508413 at *2. Here, Defendant presented evidence (including through declaration and in-person testimony) on the potential burden faced by the counties. *See Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) ("[A]n absent party's ability to protect its interest will not be impaired by

---

[4]   Moreover, as the record makes clear, the counties as a practical matter established the October 10 deadline in deference to the Secretary's express opinion on the deadline. [*See, e.g.*, Hr'g Ex. 13 ("I have been told that I should follow the October 10, 2016 deadline date as determined by the Secretary of State's office."); Hr'g Ex. 14 (similar); Hr'g Ex. 15 (similar); Hr'g Ex. 16 (similar)]
[5]   Similarly, Plaintiffs' injury in this case "will be 'redressed by a favorable decision'" of this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). As the chief election officer in Arizona, the Secretary certainly has the power to set the voter registration cut-off and ensure compliance with it. *See* A.R.S. § 16-142(A)(1). [*See also* Spencer Test. at 75:6–10 ("[A] precinct roster is a document that a county will use that contains the eligible voters for election day . . .  [a]nd that eligibility date is set by the Secretary of State's Office.")]

1  its absence from the suit where its interest will be adequately represented by existing

2  parties."). Joinder of those counties is not required.[6]

3  **V.      THE DOCTRINE OF LACHES DOES NOT PRECLUDE THIS ACTION.**

4          Defendant's last ditch argument that Plaintiffs' claims are barred by the equitable

5  doctrine of laches is similarly without merit. Generally, to establish the defense of laches,

6  a defendant must prove (1) "an unreasonable delay by the plaintiff" and (2) "prejudice to

7  itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).

8          First, there was no unreasonable delay. As described above, Plaintiffs engaged in

9  reasonable efforts to resolve this issue up until October 10, 2016. [Spencer Test. at 96:9-

10  20, 98:10-99:23; Hr'g Ex. 21; Hr'g Ex. 22; Scharff Test. at 117:18-24] Bringing suit nine

11  days later was reasonable. Second, the Defendant cannot show "expectations-based"

12  prejudice.[7] *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir.

13  2012). Apart from this expedited briefing schedule, Defendant cannot (and does not)

14  argue that she took any "actions or suffered consequences that [she] would not have" had

15  Plaintiffs' brought suit earlier. *Id.* (citation omitted).

16          Moreover, the application of a laches defense is particularly inappropriate in this

17  case, where the challenged conduct affects the right to vote of thousands of Arizonans.

18  *See Bishop v. Lomenzo*, 350 F. Supp. 576, 581 (E.D.N.Y. 1972) (public interest in

19  enforcement of law "which could, unless restrained, affect the rights of thousands of

20  qualified voters" is "paramount and should not be defeated because of laches").

21                                        **CONCLUSION**

22          For the reasons stated above, Plaintiffs respectfully request this Court grant

23  declaratory and injunctive relief.

24          [6]  In any event, even if a party is deemed necessary, the Court must consider
25  whether it is feasible to join that party, and if it is not feasible, to consider whether "in
    equity and good conscience, the action should proceed," in light of, among other things,
26  "the extent to which a judgment rendered in the person's absence might prejudice that
    person." Fed. R. Civ. P. 19(b)(1). Here, because the prejudice to the counties has been
27  both well-presented and appears merely speculative, the action should proceed.
         [7]  The Defendant cannot show evidentiary-based prejudice either. No witnesses or
28  evidence are unavailable to Defendant. *Evergreen*, 697 F.3d at 1227.

1    Dated:  October 24, 2016                **PERKINS COIE LLP**

2

3                                            By:  /s/ Alexis E. Danneman
                                                  Kevin J. Hamilton (Wash. Bar No. 15648)
                                                  Marc Erik Elias (D.C. Bar No. 442007)
4                                                 *Admitted Pro Hac Vice*
                                                  700 Thirteenth Street, N.W., Suite 600
5                                                 Washington, DC 20005-3960

6                                                 Sambo Dul (Bar No. 030313)
                                                  Alexis E. Danneman (Bar No. 030478)
7                                                 Thomas D. Ryerson (Bar No. 028073)
                                                  **PERKINS COIE, LLP**
8                                                 2901 N. Central Avenue, Suite 2000
                                                  Phoenix, Arizona 85012-2788
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

133337856.5                              -12-

1

**CERTIFICATE OF SERVICE**

2            ☒       I hereby certify that on October 24, 2016, I electronically transmitted the

3    attached documents to the Clerk's Office using the CM/ECF System for filing.

4

5                                    s/ Indy Fitzgerald

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28