**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Democratic Party and Democratic National Committee, ) ) ) | No.  CV-16-03618-PHX-SPL |
| ) | **ORDER** |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| Michele Reagan, Secretary of State, ) ) | |
| Defendant. ) ) | |

Both the United States and the State of Arizona observe two things: (1) general elections are to take place on the Tuesday following the first Monday in November in a given even number year, *see* 2 U.S.C. § 1, 7; 2 U.S.C. § 3; Ariz. Const. art. VII, § 11; Ariz. Rev. Stat. § 16-211; and (2) "Columbus Day" is a recognized holiday that falls on the second Monday in the month of October, *see* 5 U.S.C. § 6103(a); Ariz. Rev. Stat. § 1-301(A)(12). While these well-established events are seemingly non-controversial, this election cycle, Arizona has managed a way to sift out some uncertainty.

Arizona law provides that "[n]o elector shall vote in an election... unless the elector has been registered to vote… and the registration has been received… prior to midnight of the twenty-ninth day preceding the date of the election." Ariz. Rev. Stat. § 16-120. Applying this calculation strictly, the Arizona voter registration deadline for the upcoming November 8, 2016 general election was set on the 29th day that preceded it - October 10, 2016, Columbus Day.

Plaintiffs the Arizona Democratic Party and Democratic National Committee

("Committees") filed the instant lawsuit suing Defendant Michele Reagan in her official capacity as the Secretary of State ("Secretary" or "State"). (Doc. 1.) The Committees claim that the Secretary's decision not to extend the October 10, 2016 voter registration deadline, and to preclude certain voters whose registration applications were received on October 11, 2016 from voting in the November 8, 2016 general election, violated federal and state law, and imposed an unconstitutional burden on voters. The Committees request declaratory and injunctive relief. For the reasons that follow, the Court finds that the Committees prevail on the merits of their claims, in part, but concludes that they are not entitled to relief.

## BACKGROUND[1]

On February 10, 2016, the Secretary published its 2016 elections calendar on its website, listing October 10, 2016 as the "[v]oter registration deadline for General Election." (Doc. 15-1 at 4-11, ¶ 4; Hr'g Exh. 25 ¶ 4; Doc. 4-5 at 29-33; Hr'g Exh. 7.)[2]

Sometime in the months that followed, "at least one county asked [the Secretary's Office] for guidance" with respect to the voter registration deadline and the Columbus Day holiday.  (Doc. 30, Hr'g Tr. 68:4-17.) As a result, on August 25, 2016, Eric Spencer ("Spencer"), State Elections Director, sent an email to all fifteen counties notifying them that although it was Columbus Day, the voter registration deadline would fall on October 10, 2016. (Doc. 15-1 at 4-11, ¶ 6; Hr'g Exh. 25 ¶ 6; Doc. 30, Hr'g Tr. 68:4-17.)

On August 26, 2016, the Secretary issued the Arizona 2016 General Election Publicity Pamphlet. (Docs. 4-5 at 40-167; Hr'g Exh. 9;[3] Doc. 15-1 at 4-11, ¶ 6; Hr'g Exh. 25 ¶ 6.) *See also* Ariz. Rev. Stat. § 19-123(A) ("the secretary of state shall cause to be printed… a publicity pamphlet"). Following the Secretary's message to voters, the pamphlet provides in relevant part:

---

[1]     Unless otherwise noted, the following is not disputed by the parties.

[2]     Also found at: https://www.azsos.gov/elections/elections-calendar-upcoming-events (last visited November 3, 2016).

[3]     Also found at: https://www.azsos.gov/elections/voting-election/election-information (last visited November 3, 2016).

**DEADLINE: October 10** is the **registration deadline** for the 2016 General Election, if you are not already registered to vote.

**REGISTER ONLINE:** Register to vote online by using the EZ voter registration service at www.servicearizona.com. A valid Arizona driver's license or non-operating identification license is necessary.

**PAPER REGISTRATION**: Voter registration forms are available:
- From the Secretary of State's website (www.azsos.gov);
- By calling the Secretary of State's Office at 1-877-THE-VOTE (1-877-843-8683);
- By contacting your County Recorder's Office (listed on page 11); or
- At other government offices and public locations throughout the state.

*Paper forms must be received by your County Recorder or the Secretary of State's Office BEFORE 5:00 p.m., October 10, 2016. Please note, some County Recorder Offices may be closed on October 10 for Columbus Day; plan accordingly. Online registration is available through midnight on October 10.*

(Doc. 4-5 at 44 (emphasis in original.) The pamphlet was posted on the Secretary's website and sent to each household with a registered voter. (Doc. 15-1 at 4-11, ¶ 5; Hr'g Exh. 25 ¶ 5.)

On September 19, 2016, Spencer Scharff ("Scharff"), Voter Protection Director for the Arizona Democratic Party, sent letters to all fifteen Arizona county recorders requesting that the deadline be extended to October 11, 2016 pursuant to Ariz. Rev. Stat. § 1-303, because certain voter registration methods would not be accessible to applicants on Columbus Day. (Doc. 5-1 at 4-4; Hr'g Exh. 12; Doc. 30, Hr'g Tr. 22:11-24:18.) Scharff sent a copy of those letters to Spencer. (Doc. 15-1 at 4-11; Hr'g Exh. 25; Doc. 30, Hr'g Tr. 22:15-22.) With the exception of Mohave County, all county recorders responded to Scharff informing him that they would not extend the registration deadline date "as determined by the Secretary of State." (Doc. 5-1 at 6, 8, 10, 12; Hr'g Exhs. 13-16; Doc. 5 ¶ 3.) The Mohave county recorder responded by email advising that it would extend the voter registration deadline to October 11, 2016 because they were one of the few counties whose offices would be closed on the holiday. (Doc. 5-1 at 14; Hr'g Exh. 17.)

On September 19, 2016, Arizona House Minority Leader Eric Meyer sent a letter

3

to Arizona Attorney General Mark Brnovich requesting a formal opinion as to last day to submit voter registration to be eligible to vote in the general election. (Doc. 5-1 at 16-17; Hr'g Exh. 18.) The letter expressed that the deadline should be extended to October 11th pursuant to Ariz. Rev. Stat § 1-303. (Id.) On September 28, 2016, Deputy Solicitor General for the Arizona Attorney General's Office, Dominic Draye, responded to Meyer's letter, declining to issue an official attorney general opinion regarding the "policy decision" of the Secretary. (Doc. 5-1 at 19; Hr'g Exh. 19.)

In Arizona, residents may generally register to vote by one of the following methods: in-person at county recorder offices, Ariz. Rev. Stat. § 16-134; in-person through designated public assistance agencies, Ariz. Rev. Stat. §§ 16-134, 16-140; in-person at a Motor Vehicle Division ("MVD") office, Ariz. Rev. Stat. § 16-112; by mail, § 16-134; or online through the Service Arizona website, www.servicearizona.com (Doc. 4-3 at 2-24; Doc. 4-4 at 1-24; Hr'g Exh. 4 at p. 36).

On October 10, 2016, post offices and MVD offices were closed. With the exception of Mohave County, all 14 county recorder offices were open and received in-person voter registration applications (Doc. 15-1 at 4-11, ¶¶ 17, 20; Hr'g Exh. 25 ¶¶ 17, 20.) Voter registration applications were received online via Service Arizona. The Secretary's office was open and received voter applications in-person and by email (to Spencer). (Doc. 15-1 at 4-11, ¶ 18; Hr'g Exh. 25 ¶ 18; Hr'g Exh. 22.) Pursuant to an agreement with the counties, one of the headquarters or field offices for each of the democratic and republican parties was open and received in-person voter registration applications which would be accepted by the counties the following day. (Doc. 30, Hr'g Tr. at 116:3-10 and 63:4-8; Doc. 15-1 at 4-11, ¶ 18; Hr'g Exh. 25 ¶ 18.)

On October 10th, however, there was a two-hour period of interruption on the voter registration website due to heavy traffic. Counsel for the Arizona Democratic Committee sent a letter to the Secretary concerning this issue and requesting that the voter registration deadline be extended to October 11, 2016. (Doc. 30, Hr'g Tr. 96:9-20, 98:10 - 99-18, 117:18-24; Hr'g Exhs. 21, 22.) Spencer, rather than the Secretary,

1    responded by email, declining to extend the deadline. (Doc. 30, Hr'g Tr. 99:19-100:23;

2    Hr'g Exh. 22.) [4]

3           On October 11, 2016, county recorder offices continued to receive voter

4    registration applications. (Doc. 15-1 at 4-11, ¶ 17; Hr'g Exh. 25 ¶ 17; Hr'g Exh. 22.)[5]

5    Individuals went to the Committees' field offices seeking to register to vote for the

6    upcoming election. (Doc. 5 at 4, ¶ 12.) While individuals were provided with applications

7    to complete that would be delivered to the Maricopa County recorder, voters were

8    informed that because the deadline to register fell on October 10, they were too late to be

9    eligible to vote in the general election. (Doc. 5 at 4, ¶¶ 12-13.)

10          On October 19, 2016, nine days after the voter registration deadline had passed

11   and one week into early voting, the Committees filed a complaint initiating the instant

12   action. (Doc. 1.) In the complaint, they claim: that the October 10, 2016 deadline violated

13   the National Voter Registration Act of 1993 ("NVRA") (Count I); that the Secretary's

14   refusal to extend the voter registration deadline to October 11, 2016 unconstitutionally

15   burdened individuals' fundamental right to vote in violation of the First and Fourteenth

16   Amendments to the United States (Count II); and that the October 10, 2016 deadline

17   violated established state law (Count III).

18          In the complaint, the Committees ask the Court to issue an order: (1) "[d]eclaring

19   that all otherwise eligible Arizona voters who submitted a valid voter registration

20   _____

21   [4]       The parties do not dispute the number of voter registration applications received,
     or the fact that the number will change with time due to the expedited nature of this
22   action. Thus, the Court notes that the number of voter registration applications received is
     uncertain and the reported dates of those applications are unclear. Spencer's affidavit
23   provides that 21,135 new voter registration applications had been received by county
     officials. (Doc. 15-1 at 4-11; Hr'g Exh. 25 ¶ 17.) Spencer testified that on October 10,
24   2016, 15,000 voter registrations had been received online.  (Doc. 30, Hr'g Tr. 79:4 –
     80:25.) Comparatively, Mary Fontes, Federal Compliance Officer for Maricopa County,
25   testified that Maricopa County alone had received 48,000 voter registration forms on
     October 10th, or which approximately 31,000 were received online via ServiceArizona,
26   while 17,000 were received over-the-counter and by mail. (Doc. 30, Hr'g Tr. 108:23 –
     109:7; 112:14-23.)

27   [5]       Spencer's affidavit provides that 2,069 new voter registration applications had
     been received by county officials on October 11, 2016. (Doc. 15-1 at 4-11, ¶ 17; Hr'g
28   Exh. 25 ¶ 17.)

application, through any acceptable means, before midnight on October 11, 2016 are eligible to vote in the November 8 Election;" (2) [p]reliminarily and permanently enjoining [the Secretary] from disqualifying any Arizona voter from voting a regular ballot in the November 8 Election solely because he or she did not register by October 10, 2016, if he or she submitted a valid voter registration application before midnight on October 11, 2016 and is otherwise eligible to vote;" (3) "[r]equiring [the Secretary] to ensure that voter registration applications submitted before midnight on October 11, 2016 are processed in time for eligible voters to be able to vote a regular ballot in the November 8 Election;" (4) "[r]equiring [the Secretary] to identify all eligible Arizona voters who submitted a voter registration application at any time October 11, 2016, and notify such voters that they are eligible to vote in the November 8 Election by: (1) mailing a notice to each voter's current residential address (post-marked as soon as possible but, in any event, no later than November 1, 2016); and (2) posting a prominent notice to this effect on Defendant's website;" and (5) "[r]equiring [the Secretary] to provide to [the Committees] (as soon as possible but, in any event, no later than November 1, 2016) a list of all eligible Arizona voters who submitted a voter registration application at any time on October 11, 2016." (Doc. 1 at 10-11.)

The Committees now ask for modified relief, acknowledging the proximity of the upcoming general election. (Doc. 37.) The Committees request that the Court "modify" the relief sought and order the Secretary to: (1) "ensure that voters who registered on October 11, 2016 may vote a provisional ballot in the November 8 Election and that such provisional ballots will be counted upon confirmation that the voter registered on October 11 and is otherwise eligible to vote;" and (2) "shall notify all October 11 registrants that they may vote a provisional ballot in the November 8 Election by: (1) immediately mailing a notice (marked as "Official Election Material," and identifying the voter's assigned polling place) to such voters' current residential address; and (2) immediately posting a prominent notice to this effect on [the Secretary's] website." (Doc. 37 at 2.)

Concurrent with the filing of the Complaint, Plaintiffs filed an emergency motion

for a temporary restraining order and preliminary injunction. (Doc. 2.) In light of the looming general election, the Court ordered expedited briefing; a Response (Doc. 14), Reply (Doc. 22), and Surreply (Doc. 29) have been filed. The Court placed the parties on notice that the trial on merits would be consolidated with the hearing on the motion (Doc. 8), and an expedited trial on the merits was held on October 21, 2016 (Docs. 17, 30).[6] The parties were provided with an opportunity to present relevant witnesses and testimony as well as oral argument on the controlling issues. The Court heard the testimony of three witnesses: Spencer Scharff, Eric Spencer, and Mary Fontes, a Federal Compliance Officer for Maricopa County.[7]

Subsequent to the hearing, the Committees filed: (1) a motion to strike exhibits attached to the Secretary's sur-reply (Doc. 31); (2) a motion to supplement the record with an October 28, 2016 article in which the Secretary purportedly advocated for the inclusion of the 2,069 October 11, 2016 voter registration applications (Doc. 34); and (3) a motion to modify the relief requested (Doc. 37). The Secretary has filed responses

---

[6]     Due to the nature of the relief requested in the motion and complaint, the Court found that acceleration and consolidation was warranted; further delay would not promote the interests in this action. Any extended period of discovery would serve only to postpone the resolution of this case until after the election has passed, thereby mooting the relief requested. *See Arizona Green Party v. Reagan*,__ F.3d ___, 2016 WL 5335037, at *3 (9th Cir. Sept. 23, 2016); *American Party of Texas v. White*, 415 U.S. 767, 771 (1974). The Court observes that the evidentiary record is limited, specifically with regard to number of the voter registrations received. However, this additional discovery would not aid the Court's decision or change the outcome in this case.

While the State contends that the expedited adjudication supports its position that the doctrine of laches bars relief (*see* Doc. 29), neither party has objected to the Court's acceleration of the briefing or trial, nor opposed consolidation of the request for an emergency injunction with the merits in this action. *See* Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action"); Fed. R. Civ. P. 65(a)(2) (the court may accelerate hearing on the merits of request for injunctive relief); *Isaacson v. Horne*, 716 F.3d 1213, 1220 (9th Cir. 2013) ("A district court may consolidate a preliminary injunction hearing with a trial on the merits, but only when it provides the parties with clear and unambiguous notice of the intended consolidation either before the hearing commences or at a time which will afford the parties a full opportunity to present their respective cases") (internal brackets and quotation marks omitted).

[7]     While there was some disagreement among the witnesses concerning the application of election law, no evidence was presented to impeach their general credibility. To the extent the witnesses expressed lay opinions of belief that are not by corroborated by some evidence of record, unless otherwise noted, the Court's findings do not depend on those opinions.

7

objecting to both. (Docs. 32, 36, 38.) The Secretary also filed a notice of supplemental authority (Doc. 33).

### LEGAL STANDARD

"To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). *See also Arizona Dream Act Coalition v. Brewer*, 818 F.3d 901, 919 (9th Cir. 2016); *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). In contrast to a prohibitory injunction, a mandatory injunction ordering a responsible party to take action should not issue "unless the facts and law clearly favor the moving party," *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994), and "extreme or very serious damage will result," *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). *See also Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150, 1160 (9th Cir. 2011) ("a mandatory injunction is particularly disfavored" and should not be "issued in doubtful cases"); *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1979).

An injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 24 (2008). *See also eBay,* 547 U.S. at 391, 394 ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court"). Further, whether declaratory judgment should be granted is discretionary. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011); 28 U.S.C. § 2201 ("In a case of actual

controversy within its jurisdiction," the Court may "declare the rights and other legal relations of any interested party seeking such declaration.").

## DISCUSSION

### I.    Jurisdiction and Venue

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as a case arising under the laws of the United States, 42 U.S.C. §§ 1983 and 1988 and 52 U.S.C. § 20510; under 28 U.S.C. §§ 1343(a)(4) and 1357, as a case to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote; and under 28 U.S.C. § 1367, which confers supplemental jurisdiction over the state law challenge. The requests for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, 52 U.S.C. § 20510, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

Jurisdiction over the Secretary exists because she is sued in her official capacity as an elected official of Arizona in which she resides, and venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in this district.

### A.    Necessary Parties

The Secretary argues that the Court should dismiss Counts II and III of the complaint due to the Committees' failure to name necessary parties in this case – Arizona county officials. (Docs. 14, 29, 36.)  This challenge is rejected.

Rule 19 of the Federal Rules of Civil Procedure identifies when an absent party is "necessary" and must be joined in suit if feasible. First, a person is necessary if "the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). *See* Fed. R. Civ. P. 19(a)(1)(A). The sufficiency of the relief available "is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3rd Cir. 1996). "Second, a person is

necessary if he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest." *Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing Fed. R. Civ. P. 19(a)(1)(B)(i)). "Third, a person is necessary if he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest." *Id.* (citing Fed. R. Civ. P. 19(a)(1)(B)(ii)).

The Secretary maintains that because no election official with authority to enforce the voter registration deadline has been named, any relief the Committees would receive against the Secretary would be hollow. *See* Fed. R. Civ. P. 19(a)(1). She contends that she "does not have authority under Arizona law to declare who is, and who is not, a registered voter. Rather, Arizona law delegates to the *Counties*, not the State, the responsibility for determining who is a registered voter when they prepare precinct registers listing those eligible voters. A.R.S. § 16-168(A). And in that role, it is the *Counties*, not the Secretary, who are responsible for disqualifying voters who fail to comply with registration requirements." (Doc. 29 at 8 (emphasis in original).) Consequently, the Secretary contends she is unable to guarantee compliance with any injunction issued by the Court, and the counties are the proper defendants. This argument is rejected.

The Secretary mischaracterizes the nature of her position and her relationship with the counties in administering voter registration. The Secretary is Arizona's chief election officer who is responsible for overseeing and administering elections in Arizona.[8] *See* Ariz. Rev. Stat. § 16-142(A). The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines. *See* Ariz. Rev. Stat. § 16-452(A) ("the secretary of state shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of

---

[8]     The powers and duties of the Secretary of State are prescribed by law. Ariz. Const. art. V, § 9.

producing, distributing, collecting, counting, tabulating and storing ballots."); § 16-168(J) ("The secretary of state shall develop and administer a statewide database of voter registration information that contains the name and registration information of every registered voter in this state").[9] Any person who does not abide by the Secretary's rules is subject to criminal penalties.  *See* Ariz. Rev. Stat. § 16–452(C); *Arizona Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1280–81 (9th Cir. 2003).

The Secretary does not serve as a mere legal adviser to the counties. From her statutory responsibility to oversee elections in Arizona flows not only authority, but a duty to ensure that voter registration regulations are administered in a fair and uniform manner. *See Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008) (the Secretary of State, as designed by the state as the chief election official under 52 U.S.C. § 20509, is responsible for the "implementation and enforcement" of the NVRA). This duty and authority extends to the Secretary's oversight of voter registration as carried out by the counties, and is embodied in Arizona's voter registration regulations. *See, e.g.,* Ariz. Rev. Stat. § 16-407(A) ("no person may perform the duties or exercise the authority of an election officer or of the clerk of the board of supervisors or the county recorder in performance of election duties in or on behalf of any county unless the person is the holder of an election officer's certificate issued by the secretary of state"); § 16-168(J) ("For the purpose of maintaining compliance with the help America vote act of 2002, each county voter registration system is subject to approval by the secretary of state for compatibility with the statewide voter registration database system"); § 16-168(L) ("If the county recorder does not provide the requested materials within the applicable

---

[9]      In prior years, the registration deadlines have been set forth in the "Arizona Election Procedures Manual," issued prior to a given election by the Secretary under her rulemaking authority. *See* Ariz. Rev. Stat. § 16-452(B); (Doc. 4-4 at 15-16; Hr'g Exh. Exh. 4; Doc. 4-7 at 31; Hr'g Exh. 11). Notably, no Arizona Election Procedures Manual was issued in 2016. *See* Arizona Elections Procedure Manual (last revised 2014), https://www.azsos.gov/sites/azsos.gov/files/election_procedure_manual_2014.pdf     (last visited November 3, 2016). The Secretary's authority to promulgate rules and enforce them however does not cease because she does not exercise them. Similarly, her express statutory authority to promulgate rules by way of the "Arizona Election Procedures Manual" does not limit her authority to take action by other means.

time prescribed … a recognized political party may request that the secretary of state provide precinct lists and access to information…The secretary of state may charge the county recorder a fee determined by rule for each name or record produced.").

In imposing the October 10, 2016 voter registration deadline, the counties deferred to the Secretary's determination. (*See* Doc. 5-1 at 6; Hr'g Exh. 13 (following "the October 10, 2016 deadline date as determined by the Secretary of State's office."); Doc. 5-1 at 8, 10, 12; Hr'g Exhs. 14-16.) The fact that Mohave County extended its deadline says little about whether, in light of the Secretary's directive, it was permitted to do so. Likewise, the Secretary's failure to ensure Mohave County uniformly complied with the October 10, 2016 deadline is not indicative of whether she had the ability or obligation to do so. The mere possibility that a county might not follow the Secretary's directive is insufficient to show that an injunction against her would not accord the Committees the complete relief they seek. "If in the future the plaintiffs believe that other officials are acting in violation of federal [or state] law, they may bring another action against those officials." *Salt River Project*, 672 F.3d at 1180.

The Secretary next argues that absent joinder, this lawsuit will directly impair the interests of the unnamed counties. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). The Secretary maintains that because county officials have not been named, "there is no representative to articulate the magnitude of this administrative burden and expense." (Doc. 14 at 5.) That is not the case. The interests of the Secretary are aligned with the counties and she is capable of presenting arguments on behalf of the absent county officials. *See Salt River Project*, 672 F.3d at 1180. To this end, the Secretary presented the testimony of a county elections official. Lastly, because the counties are conferred with the authority to facilitate, not regulate voter registration, their absence would not leave the Secretary subject to inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii); Ariz. Rev. Stat. §§ 16-131, 16-134 (setting forth the voter registration duties of the county recorder and deputy registrars).

Therefore, the counties are not necessary parties and joinder is not required for a

just adjudication.

**B.    Constitutional Standing**

The Secretary further challenges constitutional standing, on the basis that the injuries claimed are neither traceable to nor redressable by her. (Doc. 14, 29.)

Constitutional standing requires that a plaintiff: (1) must have suffered an injury in fact, (2) the injury must be fairly traceable to the defendant's conduct, and (3) the injury could be likely redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the Committees' alleged injury is "traceable to the challenged action of the defendant, and not...the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. As noted above, the Secretary made the determination concerning the voter registration deadline, and the counties deferred to that determination. The "line of causation" between the Secretary's actions and the Committees' alleged harm is far more than "attenuated." *Allen v. Wright*, 468 U.S. 737, 757 (1984); *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir.2011)

Further, "it must be likely, as opposed to merely speculative," that the Committees' alleged injury could be redressed by a favorable decision issued against the Secretary. *See Lujan*, 504 U.S. at 561. The Secretary's contention that she could not cure any injury suffered because the counties directly administer voter registration is unavailing. The Secretary promulgates the rules that are applicable to and mandatory for statewide voter registration, and the counties are bound to follow them. Because the Secretary has the authority to ensure compliance with election regulations, a mandatory injunction issued against her would redress the Committees' alleged injuries. *See Bennett v. Spear*, 520 U.S. 154, 169–71 (1997)' *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010); *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38 (1976) ("the relevant inquiry is whether... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision."). Similarly, declaratory relief would settle "some dispute which affects the behavior of the defendant[s] toward the plaintiff[s]." *Hewitt v. Helms*, 482 U.S. 755, 761, (1987).

13

1    Therefore, the Committees have made a sufficient showing of Article III standing

2    to pursue declaratory and injunctive relief against the Secretary.

3    **II.      Merits**

4         **A.      Claim under the First and Fourteenth Amendments**

5         The right to vote has long been recognized as essential to the protection and

6    exercise of constitutional rights and the constitutional structure itself. *See Wash. State*

7    *Grange v. Wash State Republican Party*, 552 U.S. 442, 451 (2008); *Illinois Bd. of*

8    *Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("voting is of the most

9    fundamental significance under our constitutional structure"); *Wesberry v. Sanders,* 376

10   U.S. 1, 17, (1964) ("[o]ther rights, even the most basic, are illusory if the right to vote is

11   undermined."). But "as a practical matter, there must be a substantial regulation of

12   elections if they are to be fair and honest and if some sort of order, rather than chaos, is to

13   accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

14        A state election law or policy, "whether it governs the registration and

15   qualification of voters, the selection and eligibility of candidates, or the voting process

16   itself, inevitably affects, at least to some degree, the individual's right to vote." *Anderson*

17   *v. Celebrezze*, 460 U.S. 780, 788 (1983). "A court considering a challenge to a state

18   election law must weigh 'the character and magnitude of the asserted injury to the rights

19   protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate'

20   against 'the precise interests put forward by the State as justifications for the burden

21   imposed by its rule,' taking into consideration 'the extent to which those interests make it

22   necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)

23   (quoting *Anderson*, 460 U.S. at 788-89). This "balancing and means-end fit framework,"

24   *Public Integrity Alliance, Inc. v. City of Tucson*, ___F.3d___, 2016 WL 4578366, at *3

25   (9th Cir. Sept. 2, 2016), "is a sliding scale test, where the more severe the burden, the

26   more compelling the state's interest must be, such that 'a state may justify election

27   regulations imposing a lesser burden by demonstrating the state has important regulatory

28   interests,'" *Arizona Green Party*, 2016 WL 5335037, at *4 (quoting *Ariz. Libertarian*

*Party v. Reagan*, 798 F.3d 723, 729–30 (9th Cir. 2015)).

## 1.    **Burden on Voters**

The Committees claim that the Secretary's refusal to extend the October 10, 2016 voter registration holiday deadline impermissibly burdened constitutional rights and led to the "disenfranchisement of at least 2,069 voters" who registered on October 11, 2016. (Doc. 22 at 6.)

The Committees argue that October 10th deadline severely burdened a significant portion of the voter registration population because the last day fell on a holiday. The Committees submit that voters often wait until the last day to register; the Secretary's statistics show that the top three days for voter registration in Arizona were the registration deadline dates in the past three presidential election cycles: 21,442 voters in 2004, 38,872 voters in 2008, and 24,390 voters in 2012. (Doc. 4-5 at 2-5; Hr'g Exh. 5.) Historically, over 40%[10] of the voter registration applications received in Arizona are by mail or in-person at MVD offices. (Doc. 4-1 at 7-46; Doc. 4-2 at 1-45; Hr'g Exh. 2.) Due to the holiday however, post offices and the MVD were closed on the deadline. Further, although individuals could register to vote online, this method for registration was unavailable to individuals without access to the internet and an Arizona driver's license or state-issued identification card. (Doc. 5 ¶ 11; Doc. 30, Hr'g Tr. 42:11-21, 87:4-16.)

Assuming that there was demonstrable number of individuals who did not register to vote on October 10, 2016 because it fell on a holiday, those voters cannot be said to have been disenfranchised by the Secretary's deadline. In upholding registration deadlines, both the Supreme Court and the Ninth Circuit observe the critical difference between regulations that categorically deny the right to vote and those which merely require an applicant to take some action to satisfy reasonable registration requirements. *See Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973) (finding the burden imposed on the right to vote by the registration deadline was no so severe as to be unconstitutional,

---

[10]     The Secretary argues that this figure, reported by the U.S. Elections Assistance Commission for 2010 – 2012 period, is misleading given the suspected rise of individuals who register online. (Doc. 30, Hr'g Tr. 60:1 - 61:14.)

explaining that to the extent the plaintiffs' "plight can be characterized as disenfranchisement at all, it was not caused by [the statute], but by their own failure to take timely steps to effect their enrollment."); *Burdick*, 504 U.S. at 438 (finding state's write-in vote prohibition "imposed a very limited burden upon voters' rights" because it only required voters "to act in a timely fashion if they wish to express their views in the voting booth."); *Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989) (finding plaintiffs were not "absolutely disenfranchise[d]" by the challenged provision... They could have registered in time for the… election, but they failed to do so. What [was] at issue … [was] not a 'ban' on the plaintiffs' right to vote, but rather, a 'time limitation' on when the plaintiffs had to act in order to be able to vote.") *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

The holiday deadline did not limit the methods of voter registration; it merely imposed a timeframe in which voters had to act in order to register to vote in the general election. Nor did the deadline impose restrictions in a disproportionate manner because only certain methods for voter registration were available on Columbus Day. The deadline did not prevent individuals from registering to vote in-person at the MVD[11] or by postmarked mail; it merely required those wishing to do so during open operating business hours at some date and time prior to October 10, 2016. The voters at issue here could have registered in time for the general election, but unfortunately did not do so.

The Committees point to the interruption on the website that occurred on October 10th which prevented voters from registering during a two-hour period. (Doc. 5 ¶ 10.) They point to reports that individuals who had recently obtained United States citizenship had difficulty registering online using their MVD-issued driver's license numbers, and were unable to register on October 10th because they could not go in-person to correct

---

[11]     As noted above, Mohave County, the only county closed on Columbus Day, accepted voter registration applications on October 11, 2016. The remaining counties and the Secretary's office were open and accepting voter applications. Further, the political parties had an agreement with the counties to accept voter registration on October 10, 2016 which could be delivered to the counties the following day. (Doc. 30, Hr'g Tr. 116:8-12.)

the issue because the MVD was closed. (Doc. 5 ¶ 14.) Assuming no other available avenue to register was available to these voters on October 10, 2016, these circumstances, while unfortunate, were not the result of the Secretary's holiday deadline. Circumstances like these could arise at any time an individual registers to vote at the last moment to do so.[12]

The holiday deadline is also not "so severe as itself to constitute an unconstitutionally onerous burden" on the exercise of the right to vote. *Rosario*, 410 U.S. at 760. The fact that the deadline fell on a holiday was not sufficiently confusing, unusual, or unexpected. *Cf. Florida Democratic Party v. Scott*, 2016 WL 6080990 (N.D. Fla. Oct. 10, 2016) (enjoining defendants who had refused to extend voter registration deadline where the hurricane unexpectedly prevented voters from registering). While the Committees point to the fact that the Secretary moved the deadline in 2012 when the voter registration holiday fell on Columbus Day (*see* Doc. 4-7 at 2-39; Hr'g Exh. 11), in prior general election years, the deadline was not extended (*see* Doc. 15-1 at 13, 15-16; Hr'g Exhs. 26, 27). The announcement of the deadline here occurred early in the calendar year, notice of the deadline was provided to the public, and the deadline was not moved or inconsistently reported. *See Anderson*, 460 U.S. at 797 (case precedent "reflect[s] a greater faith in the ability of individual voters to inform themselves").

Further, the Committees fail to identify a coherent link between the October 10, 2016 deadline and the alleged disenfranchised voters who registered on October 11,

---

[12]    The Committees also submit a report of an individual who had timely submitted her voter registration, but due to the holiday weekend, did not receive the letter from the county recorder's office notifying her that her application was deficient until October 11, 2016. (Doc. 5 ¶ 15.) Because this individual was not required to cure the deficiency prior to the deadline in order to vote in the general election, this argument is also unavailing. *See* Ariz. Rev. Stat. § 16-134(B) ("If the information on the registration form is incomplete or illegible and the county recorder is not able to process the registration form, the county recorder shall notify the applicant within ten business days of receipt of the registration form, shall specify the missing or illegible information and, if the missing or illegible information includes any of the information prescribed by section 16-121.01, subsection A, shall state that the registration cannot be completed until the information is supplied. If the missing or illegible information is supplied before 7:00 p.m. on election day, that person is deemed to have been registered on the date the registration was first received.").

2016. The Court recognizes that neither party has had the benefit of discovery in this case. However, the Committees' failure in this regard is not attributable to a lack of evidentiary support, but rather, their lack of any developed theory. Merely pointing to the voter registration applications on the basis that they received the day after the deadline is insufficient. Assuming all 2,069 individuals were new voter registrants whose applications were processed as received on October 11, 2016, the Committees identify no theory on which the Court could conclude that but for some restrictions imposed by the October 10, 2016 deadline, those registrants would have timely registered to vote. Rather, the numbers standing alone suggest to the contrary. The number of voter registrations received this cycle was reported to have been historically high; 187,855 voter registrations were received between the August 1, 2016 primary election and the October 10, 2016 general election voter registration deadlines.[13] 3,588,466 voters total are registered for the 2016 general election is. Viewed comparatively, the number of voter registration applications received on October 11, 2016 alone is not indicative of some voter registration restriction.

Absent evidence or argument demonstrating otherwise, the Court finds that the holiday deadline, and the Secretary's decision not to extend it, imposed only "a de minimis burden on constitutional rights." *Arizona Green Party*, 2016 WL 5335037, at *7.

### 2.     State's Interests

The Committees argue that in weighing the burden posed on voter registrants by the October 10, 2016 deadline, not one of the Secretary's identified interests justified her decision not to extend the voter registration deadline to October 11, 2016. The Court disagrees.

First, the Secretary shows that adhering to the voter registration deadline served

---

[13]     The Court takes judicial notice of these statistical numbers as an undisputed "matter of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). These voter registration statistics are reflected in the supplemental article filed by the Committees (*see* Doc. 34-1), and are part of public record that are readily available online. *See* http://apps.azsos.gov/election/voterreg/2016-11-08.pdf (last visited November 3, 2016); Ariz. Rev. Stat. § 16-168(H).

(and serves) the State's important interests in protecting the integrity and reliability of the electoral process itself. "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 189 (2008). *See also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("A State indisputably has a compelling interest in preserving the integrity of its election process."). The Court thinks it fair to say that the lengthy lines visited upon Arizona voters during the primary election this year did not bode well in boosting voter confidence in the electoral system. It also thinks it fair to say that public morale during this general election has not been at its highest. Thus, if the State had extended the voter registration deadline last minute in the days leading up to October 10th, or retroactively set an October 11th voter registration deadline now, it poses a realistic possibility that the public's confidence in the state's ability to competently administer elections and protect against disorder would be undermined and dissuade them from going to the ballot box next week.

Second, the Secretary has demonstrated that the decision not to extend the voter registration deadline in the weeks shortly before the deadline served (and serves) the State's important interests in the orderly, accurate, and reliable administration of elections. *See Marston v. Lewis,* 410 U.S. 679, 681 (1973) (voter registration period was necessary to permit preparation of accurate voter lists); *Burdick*, 504 U.S. at 443 (" [A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process'"); *Clingman v. Beaver,* 544 U.S. 581, 593 (2005) (states must inevitably enact reasonable regulations "to reduce election - and campaign-related disorder."). The undisputed evidence shows that the voter registration deadline is only one step in a series of orchestrated events that must take place before the election, and officials must strategically undertake a multitude of critical tasks imposed by law. For example, officials have only a brief window to transition from only receiving and processing voter registration to also receiving and processing early ballots and ballot requests. The twenty-

nine day registration deadline only proceeds the early voting period by two days, which is statutorily set to begin twenty-seven days before election day. *See* Ariz. Rev. Stat § 16-542(C). When registered voters request an early ballot within twenty-seven days of the election, county recorders must mail the ballot within forty-eight hours of the request. Ariz. Rev. Stat. § 16-542(D). By the time of the hearing which took place approximately a week after the voter registration deadline, Maricopa County reported that they had received 1.5 million early ballot request forms. (Doc. 30, Hr'g Tr. 109:13-14.)  By the tenth day preceding the election, officials must prepare and transmit voter registration poll lists. *See* Ariz. Rev. Stat. § 16-168(A).

The Court heard testimony regarding the administrative and technological actions that election officials would have to take to retroactively extend the deadline and backlog voter registration. If enjoined and required to process the October 11, 2016 voter registrations, staff would have to be reassigned and counties would have to divert significant resources that are presently dedicated to preparing for election day. It would take staff approximately 450 hours to accomplish. (Doc. 30, Hr'g Tr. 111:4-12.) Programming changes would have to be implemented in the electronic voter registration systems to accept those voter registration forms that were received October 11th. (Id.) As observed by the Committees, *see infra,* counties have already reported their precinct lists to be added to the electronic poll lists. Consequently, additional action would be needed to coordinate with all the counties to ensure those lists were updated statewide.

The Committees counter that "[w]hile the Secretary identifies administrative burdens and inconvenience in its Response[], the evidence adduced at trial makes clear that any administrative burdens would be easily manageable." (Doc. 22 at 6.) Yet at trial, testimony was offered that officials would be required to immediately reallocate resources to voter registration and continue registering voters, after the early voting period has begun and within a matter of weeks (now days) before the general election. Nothing about this can be accurately described as mere administrative inconvenience or "easily manageable." *But see Diaz v. Cobb*, 541 F.Supp.2d 1319, 1332 (S.D. Fla. 2008)

("The Constitution does not require states to prove that every component of every election regulation is indispensably necessary to avoid either an election catastrophe or an absolute impossibility of performance."). Instead, the burden placed on unprepared officials by this last minute request exponentially increases possibility for the disruption to the electoral process and bears the potential to impair the State's ability to guarantee the integrity of its elections.

In turn, the Committees move to modify the relief sought, stating that "[t]hough plaintiffs continue to question the actual severity of these alleged administrative burdens, and whether any such burdens outweigh the fundamental right to vote of thousands of Arizonans, in light of the fact that the election is now less than one week away, Plaintiffs are willing to modify the relief requested to alleviate the concerns raised by Defendant's allegations." (Doc. 37 at 2.) They contend that "[t]he modified relief would eliminate the need to incorporate eligible October 11 registrants into current precinct registers or ePollbooks. As such, the modified relief would minimize, if not completely avoid, any interruption or delay to current election preparations, while still enabling those who registered on October 11 to cast a vote in the November 8 Election." (Doc. 37 at 3.) This revision does not revive their claim.

While the Committees identify the language they would like the Court to include in the proposed revised injunction, they do not identify exactly how it modifies the demand for relief stated in their complaint. Therefore, as a practical matter, their request does not serve to simplify and expedite relief, it frustrates it. Further, it is not apparent that the proposed modifications sought would "alleviate the concerns" that would be faced by the State between now and the general election. In order to obtain relief, officials would be required to identify and process voter registration applications received on October 11, 2016. Absent this step, the Secretary cannot comply with the proposed injunction requiring her to ensure that registrants be notified that "they may vote a provisional ballot in the November 8 Election by: (1) immediately mailing a notice (marked as "Official Election Material," and identifying the voter's assigned polling

place) to such voters' current residential address." (Doc. 37 at 2.) Further, to any extent that it might alleviate an imminent concern, the modification would merely substitute one problem for another. Rather than altering precinct registers or ePollbooks prior to the election, some mechanism would have to be created to identify the October 11 voter registrations on election day statewide such that it could ensure that those provisional ballots "will be counted upon confirmation." (Doc. 37 at 2.) The possibility that this would impede the orderly, accurate, and reliable administration of the election is not only likely, it is almost certain. *See e.g.,* Arizona Election Procedures Manual, *supra*, at pp. 143-155, 185-187.

Lastly, with regard to the Committees' request that the Court order the Secretary to ensure that the October 11, 2016 voter registrants may cast provisional ballots, that demand is moot. *See* Arizona Election Procedures Manual, *supra,* at p. 156. ("Notwithstanding a determination by the board of election that a voter is not qualified to vote a regular ballot, the voter shall be allowed the right to vote a provisional ballot."); Ariz. Rev. Stat. § 16-584; (Doc. 4-5 at 49; Hr'g Exh. 9) ("Every person who timely arrives at a polling place has the right to cast a ballot and cannot be turned away. In certain situations, however, a voter may be required to vote a provisional ballot. A provisional ballot is a ballot that will only be counted if the County Recorder can determine the voter's eligibility.").

In short, the de minimus burden imposed by the deadline does not outweigh the State's important regulatory and administrative interests. *See Arizona Green Party*, 2016 WL 5335037, at *7 ("Because the record demonstrates that the [voter registration] deadlines imposes no more than a de minimis burden on the [applicants'] constitutional rights, Arizona need only demonstrate that the [] deadline serves 'important regulatory interests.'").  The Secretary's decision not to extend the deadline in the final hours was a reasonable, non-discriminatory restriction that advanced an important state interest in administering a fair and orderly election. Therefore, the Committees' constitutional claim fails on the merits, and will be dismissed.

**B.      Claim under the National Voter Registration Act**

Article I, Section IV, Clause 1 of the Constitution provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." This provision provides Congress a general supervisory power over federal elections under which it may supplement state regulations or substitute its own. *Smiley v. Holm*, 285 U.S. 355, 366–67 (1932).

Under its constitutional authority to regulate federal elections, Congress enacted the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.* (transferred from 42 U.S.C. § 1973gg–6 et seq.) to "increase the number of eligible citizens who register to vote" in federal elections, "enhance[ ] the participation of eligible citizens as voters[,]" "protect the integrity of the electoral process[,]" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). "These purposes counterpose two general, sometimes conflicting, mandates: To expand and simplify voter registration processes so that more individuals register and participate in federal elections, while simultaneously ensuring that voter lists include only eligible ... voters." *Common Cause of Colo. v. Buescher*, 750 F.Supp.2d 1259, 1274 (D. Colo. 2010).

Section 8 of the NVRA, 52 U.S.C. § 20507, requires that each state shall "ensure that any eligible applicant is registered to vote in an election" if the applicant has registered to vote "not later than the lesser of 30 days, or the period provided by State law, before the date of the election." A person is registered to vote for purposes of Section 8 when "the valid voter registration form of the applicant" is: (1) "submitted to the appropriate State motor vehicle authority" in accordance with 52 U.S.C. § 20504 (registration by application simultaneous with an application for a motor vehicle driver's license); (2) submitted by postmarked mail in accordance with 52 U.S.C. § 20505; (3) "accepted at the voter registration agency" in accordance with 52 U.S.C. § 20506 (in-

person registration at registration sites or government offices designated by each state); or (4) otherwise "received by the appropriate State election official." 52 U.S.C. § 20507(a)(1)(A) – (D). *See also Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012).

Here, the Secretary set the voter registration deadline on October 10, 2016, the twenty-ninth day before the November 8, 2016 general election. Post offices were closed on Sunday, October 9th and on Columbus Day, October 10th. MVD offices were also closed from Saturday, October 8th through Columbus Day. Therefore, in effect, the deadline to register by postmarked mail was Saturday, October 8, 2016 – 31 days before the election. The deadline to register in-person at the MVD was Friday, October 7, 2016 – 32 days before the election. The voter registration deadline therefore did not ensure that any applicant who registered to vote "not later" than 30 days before November 8, 2016 was eligible to vote in the general election.

Although the language of the NVRA is plain and leaves little ambiguity as to its application, legislative history reflects Congress' clear intent to preclude the practice employed by the Secretary. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The Congressional record states:

> Subsection (a) provides that any person registered to vote not later than 30 days, or a lesser period as provided by State law, before a Federal election shall be permitted to vote. For these purposes, registration is complete upon submitting the form to the voting registrar, motor vehicle office, designated agency or office, or on date of postmark, if mailed. While the Act is clear with regard to the motor-voter and agency-based registration deadline requirement, the mail situation may be in need of some clarification. The reference, "or a lesser period as provided by State law" means, with regard to mailed registration application, that the shorter State period would apply only if it is referenced to "date of postmark". If the shorter period provided by State law refers to the date of receipt in the registrar's office, the thirty day period provided for here would apply. It is not intended here to penalize a registration applicant; thus, if the application is postmarked after thirty days, but is received before the deadline specified by State law, it should be accepted. Also, one postmarked before thirty days but received after the deadline under State law, should also be accepted as timely.

H.R. Rep. No. 103-9, at 14 (1993), reprinted in 1993 U.S.C.C.A.N. 105, 118. *See also*

1   *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015) (the

2   NVRA "seeks to increase registration of 'the poor and persons with disabilities who do

3   not have driver's licenses and will not come into contact with the other princip[al] place

4   to register under this Act[, motor vehicle agencies].'") (quoting H.R. Rep. No. 103-66, at

5   19 (1993), reprinted in 1993 U.S.C.C.A.N. 140, 144).

6       The NVRA directs that eligible voters who register in-person at the MVD or

7   register to vote by postmarked mail up to 30 days before the date of the federal election

8   should be permitted by the state to vote in that election. The deadline set by state's

9   designated chief elections official here shortened the period expressly prescribed under

10  Section 8. Therefore, the Secretary's voter registration deadline violated Section 8 of the

11  NVRA.

12      In response, the Secretary defends on the grounds that the Committees' lack

13  statutory standing due to their failure to comply with the NVRA's statutory notice

14  provision prior to filing suit.[14] The Court agrees with the Secretary, the chief elections

15  official, that at *no* time prior to the filing this lawsuit did the Committees provide the

16  _____

17  [14]    "A person who is aggrieved by a violation of [the NVRA]" may file a lawsuit in federal court to vindicate their rights. 52 U.S.C. § 20510(b); *National Council of La Raza*

18  *v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015); *see also* 138 Cong. Rec. 10,736 (1992) (statement of Sen. Wendell Ford) (explaining that the language providing for a private

19  cause of action substituted "person" for "individual" to "permit organizations as well as individuals… to bring actions under the act"). However, "[a] person who aggrieved by a

20  violation of [the NVRA]… provide written notice of the violation to the chief election official of the State involved" prior to bringing a civil action. 52 U.S.C. § 20510(b)(1).

21  Whether notice is required and how long the person must wait to file suit after providing notice is contingent on the timing of the next federal election.

22          When the violation upon which a suit is based occurs a
            substantial time before the next federal election, the aggrieved
23          person must notify the state of the alleged violation and must
            then wait 90 days before filing suit. *Id.* § 20510(b)(1)-(2).
24          However, "if the violation occurred within 120 days" of a
            federal election, the aggrieved person must wait only 20 days
25          after notifying the state before bringing suit. *Id.* §
            20510(b)(2). "If the violation occurred within 30 days" of a
26          federal election, the aggrieved person does not need to give
            any notice before bringing suit. *Id.* § 20510(b)(3).
27

28  *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015).

25

Secretary with notice regarding their claim that the October 10, 2016 voter registration deadline violated the NVRA. *Cf. National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035–36 (9th Cir. 2015) (finding notice of ongoing violation where plaintiffs had sent the secretary of state a letter stating that "Nevada is not in compliance with Section 7" and "is systematically failing to provide the voter registration services mandated by the NVRA at its public assistance offices."). The Court also agrees with the Committees however, that under the present circumstances, they were not required to do so. The "violation" did not occur until October 10, 2016, when Secretary imposed the voter registration deadline and declined to extend it through the following day. Because that violation fell within 30 days of the federal election, no pre-suit notice was required under the NVRA. *See* 52 U.S.C. § 20510(b)(3).

The State maintains that any one of the actions concerning the deadline taken by the Secretary on February 10, August 25, or September 28 was sufficient to trigger the NVRA notice requirement. She maintains that the Committees knew of her position well in advance of the deadline, and therefore it would be contrary to the purpose of the notice provision to promote the timely resolution of disputes in advance of an election. (Doc. 29 at 3.) As discussed below, the Committees' eleventh-hour conduct precludes the relief they seek. However, it does "not alter the meaning and operation of the NVRA*." National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044–45 (9th Cir. 2015).

Therefore, the Committees prevail on the merits of their NVRA claim.

## C.    Claim under State Law

The Committees further claim that the Secretary's decision not to extend the deadline to October 11, 2016 was contrary to existing state law. (Doc. 22 at 7-8 (citing Ariz. Rev. Stat. § 1-303 ("When anything of a secular nature, other than a work of necessity or charity, is provided or agreed to be done upon a day named or within a time named, and the day or the last day thereof falls on a holiday, it may be performed on the next ensuing business day with effect as though performed on the appointed day"); Ariz. Rev. Stat. § 1-243 ("the time in which an act is required to be done shall be computed

by… including the last day, unless the last day is a holiday, and then it is…excluded.); Ariz. Atty. Gen. Op. 58-74 (1958) (concluding that when the close of voter registration fell on a holiday registration should remain open through the next business day)). The Committees attempt to distinguish *Board of Supervisors, infra,* by noting that the statute at issue there, Ariz. Rev. Stat. § 16-1104(B), does not involve voter registration and contained the additional words "not less than thirty days prior" to the election. Thus, "[u]nlike the time limit [in *Board of Supervisors*], the time here is calculated forward, beginning with the day after the [the holiday]." *Fisher v. City of Apache Junction*, 486, 28 P.3d 946, 948 (Ariz. Ct. App. 2001).

In response, the Secretary contends that the time provision in Ariz. Rev. Stat. § 16-120 may not be extended because time limits in Arizona election statutes are to be strictly construed. *See Board of Supervisors v. Superior Court*, 446 P.2d 231 (1968); *Smith v. Board of Directors, Hosp. Dist. No. 1, Pinal County*, 716 P.2d 55, 56 (Ariz. Ct. App. 1985) ("Time elements in election statutes are to be construed strictly and Rule 6(a) does not apply to them"). The Secretary argues that just like in *Board of Supervisors,* "[i]f we allow an additional day to deliver the [voter registrations] because the last day falls upon a Sunday [or holiday]," 446 P.2d at 233, the voter registrations would no longer be "received…. prior to midnight of the twenty-ninth day preceding the date of the election," Ariz. Rev. Stat. § 16-120.    A court must interpret statutes, including election statutes, in accord with the drafters' intent, with the plain language of the statute being the best indicator of that intent. *See Zamora v. Reinstein,* 915 P.2d 1227, 1230 (Ariz. 1996); *In re Estate of Winn,* 237 P.3d 628, 630 (Ariz. Ct. App. 2010). If the statute is clear and unambiguous, a court need not employ other methods of statutory construction. *See State ex rel. Romley v. Hauser,* 105 P.3d 1158, 1160 (Ariz. 2005); *State v. Riggs,* 942 P.2d 1159, 1165 (Ariz. 1997). "Statutes that are in *pari materia* - those that relate to the same subject matter or have the same general purpose as one another - should be construed together as though they constitute one law." *State v. Gamez*, 258 P.3d 263, 267 (Ariz. Ct. App. 2011) (*citing State v. Barraza*, 104 P.3d 172, 175 (Ariz. Ct.

App. 2005)).

Guided by these principals, it is apparent that the Secretary erred in her application of Ariz. Rev. Stat. § 16-120; a strict construction of its time limit is incompatible with the statutory scheme. The requirement that, in order to be valid for an election, voter registration must be "*received* by the county recorder or his designee pursuant to *§ 16-134* prior to midnight of the twenty-ninth day preceding the date of the election," Ariz. Rev. Stat. § 16-120, simply cannot be reconciled with Ariz. Rev. Stat. § 16-134, which explicitly provides that voter registration *received* after the 29th day can be valid for an election. Ariz. Rev. Stat. § 16-134 reads:

> In the case of registration by mail, a voter registration is valid for an election if it complies with either of the following:
>
> 1. The form is postmarked twenty-nine days or more before an election and is *received by the county recorder by 7:00 p.m. on the day of that election*.
>
> 2. The registration is dated twenty-nine days or more before an election and is *received by the county recorder by first class mail within five days after the last day to register to vote in that election*.

Ariz. Rev. Stat. § 16-134 (C) (emphasis added). *See also* Arizona Elections Procedure Manual, p. 39; (Doc. 30 at 106, Hr'g Tr. 113:24-114:3 ("let me explain this. If [voter registration applications] are dated or signed October 10th and we receive them within the five -- by first class mail five business days, then we, of course, we continue to process those. So it's not that we had them on the 10th. We process them after that too."). Likewise, voter registration forms received in-person by county recorders bearing a legible postmark or "otherwise reliable date" are considered "received by the county recorder" on the listed date. Ariz. Rev. Stat. § 16-134 (D). (*See also* Doc. 30, Hr'g Tr. 110: 6-9 ("We have to continue with any voter registration forms that we receive in regardless of the registration deadline. So if we receive them after the deadline, we still have to process them the same as if we received them on the deadline.").)

Indeed, strict construction of the time limit in Ariz. Rev. Stat. § 16-120 would

28

render § 16-134 superfluous and void, "contrary to the cardinal rule of statutory construction." *U.S. West Commc'ns, Inc. v. Ariz. Dep't of Revenue*, 972 P.2d 652, 656 (Ariz. Ct. App. 1998) ("statutes should be interpreted so that no clause, sentence, or word is rendered superfluous or void"); *Sherman v. City of Tempe*, 24 P.3d 1285, 1287-88 (Ariz. Ct. App. 2001) ("[L]anguage, where clear and unequivocal, controls the statute's meaning unless it leads to absurd or impossible results.") *vacated by other grounds by Sherman v. City of Tempe*, 45 P.3d 336, 340–41 (Ariz. 2002)*.* The time limits in § 16-120 need not be employed literally, and do not preclude harmonious application of § 1-303.

The Secretary counters that application of § 1-303 would result in a "patchwork" of voter registration deadlines, because some counties remain open on Columbus Day while others do not, is not persuasive. *See* Ariz. Rev. Stat. § 11-413(A) ("for the purposes of opening county offices for the transaction of business," counties can decide whether to open their offices on either Columbus Day or the Day after Thanksgiving). The Court believes the opposite; it would provide consistency among all the counties. No county that would otherwise be closed on Columbus Day would be forced to open its doors; the voter registration deadline would fall the next day.

The Court however need not determine whether the Secretary was required to extend the deadline here pursuant to § 1-303, because any application of Ariz. Rev. Stat. § 16-120 that effectively requires that voter registration to be received earlier than 30 days before a federal election is superseded by NVRA. "States must 'establish procedures to register' voters" in accordance with the NVRA." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. 2247, 2249 (2013) (The "Times, Places, and Manner" provision in the Election Clause "are 'comprehensive words' which 'embrace authority to provide a complete code for congressional elections,' including regulations relating to 'registration.'") (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). And while states may add additional voter registration requirements that complement and are harmonious with the congressional procedural scheme of the NVRA, they may not employ a requirement that conflicts with

it. *Id.* Rather, where state regulation conflicts with the NVRA, "Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012).

When implemented in the manner employed by the Secretary, as discussed above, Ariz. Rev. Stat. § 16-120 ceases to operate harmoniously with the procedural scheme for federal voter registration provided for in Sections 7 and 8 of the NVRA. Whether *some* of the methods prescribed by the NVRA were available within the 30-day or lesser timeframe, is immaterial. Partial compliance does not abrogate the presence of a direct conflict between the Secretary's October 10, 2016 voter registration deadline and Section 8 of the NVRA.

Accordingly, the Committees prevail on the merits of their state law claim.

## III.   Relief

The Committees have met the first requirement for permanent injunction; they have demonstrated actual success on the merit. Due to the circumstances presented here however, the Court does not reach the remaining factors. Instead, the Court finds that the Committees' delay in initiating this action, and the resulting prejudice that has arisen due to that delay, precludes relief.[15]

### A.   Administration of Justice

The delay in instituting this action hampered the administration of justice in this case. *See Lubin v. Thomas*, 144 P.3d 510, 511 (2006) ("In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice."); *Beltran v. Razo*, 788 P.2d 1256, 1258 (App.1990); *Sotomayor v. Burns*, 13 P.3d 1198, 1200 (Ariz. 2000).

---

[15]   The Committees seek declaratory judgment only with regard to the eligibility of Arizona voters who submitted valid voter registration on October 11, 2016 to vote in the general election, which as follows, is precluded on equitable grounds. The Committees do not ask for a declaration regarding the application of state or federal law, and under the circumstances presented here, such a declaration would amount to no more than an impermissible "opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

The Committees did not file their complaint in this action until more than a week after the voter registration deadline had passed, and only a few weeks before the general election is to take place. This delay was unreasonable. The Committees' efforts in mid-September do not explain why they did not submit their requests to extend the deadline earlier. The Committees offer no reasoning as to why they were unable to submit their requests during the months that passed after the deadline had been set at the beginning of the year and posted on the Secretary's website. Their efforts also do not explain why the Committees did not file a complaint prior to the registration deadline at the end of September, when the likelihood that they could persuade the counties or the Secretary to extend the deadline became clearly doubtful, if not surely foreclosed. Instead, their efforts only demonstrate that the Committees knew the basis of their claims in advance of the voter registration deadline and had ample opportunity to seek relief before it passed.

Although the Court called for expedited briefing and hearing, that could not cure the prejudice which resulted from the Committees' delay. By waiting until the last minute to bring their challenge, the Committees "place[ed] the court in a position of having to steamroll through the delicate legal issues." *Sotomayor v. Burns*, 13 P.3d 1198, 1200 (Ariz. 2000). This "strains the quality of decision making and is ultimately unfair to all involved." *Mathieu v. Mahoney*, 851 P.2d 81, 85 (1993). Instead, had the Committees filed suit promptly, a motion for preliminary, *prohibitory* injunction could have been briefed and decided without unreasonable burden on the Secretary, the Court, or the voters and the election process. While the Court received complete responses from the Secretary that addressed a multitude of issues, she was undoubtedly deprived of reasonable time to consider and develop this case. *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.,* 821 P.2d 181, 187 (App. 1991). That includes "the opportunity to develop and present [her] own evidence, hire an expert, or prepare [her] cross-examination." *Mathieu,* 851 P.2d at 84–85. The Committees' delay made their claims more difficult to defend against and more complex to adjudicate.

**B.      Post-Deadline Filing**

31

The Committees' delay in seeking an injunction and filing this action after the voter registration deadline itself precludes equitable relief. "[I]n order to create an appropriate incentive for parties to bring challenges to state election procedures when the defects are most easily cured, we have held that '[t]he law imposes a duty on parties… to bring their complaints forward for… adjudication" before the violation has occurred. *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180–81 (9th Cir. 1988) (quoting *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008 (9th Cir. 1978)). By waiting to file a complaint until after the deadline, the Committees frustrated the very purpose of this lawsuit – to ensure all eligible voters could register to vote in the general election. By filing this lawsuit after the deadline, no relief can be offered to those who did not register on October 11th, understanding the deadline had passed the day before. *See National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044–45 (9th Cir. 2015) ("It hardly serves plaintiffs' voter registration purpose to delay notification of the State, for the sooner the State comes into compliance, the more voters will be registered). The dilatory filing also diminished the likelihood that they can secure meaningful relief for those who did register on October 11th. If the state could identify and process those voters in time, there is little promise that the belated notice of voting eligibility would reassure and encourage registrants to vote on election day, rather than confuse and dissuade them.

The Committees' attempt to excuse their failure to seek relief earlier by pointing to the fact that they had been engaging in efforts to persuade the counties and the Secretary to extend the deadline. Their reliance on the inaction of the Secretary however was unreasonable in light of the looming voter registration deadline. *See Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980); *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180–81 (9th Cir. 1988) ("Although adequate explanation for failure to seek [prior] relief has been held to exist where, for example, the party challenging the election [procedure] had no opportunity to seek such relief… if aggrieved parties, without adequate explanation, do not come forward before the [violation], they will be barred

from the equitable relief.") (internal citations omitted).

### C.     Imminent Election

"There is no doubt that the right to vote is fundamental, but federal court cannot lightly interfere with or enjoin a state election." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Indeed, the Supreme Court has stated that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Because this action was initiated in the weeks shortly before the election, administering the relief sought by the Committees, as previously addressed, would have the effect of encumbering the election. Thus, even though the Committees may prevail on the merits of some of their claims, because issuing an injunction on the eve of an election itself would cause harm, relief should be precluded. *See Id.*; *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (holding that "under certain circumstances, such as where an impending election is imminent, and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief" even where the scheme has already been found unconstitutional); *Colon-Marrero v. Conty-Perez*, 703 F.3d 134, 145 (1st Cir. 2012).

### CONCLUSION

Any decision that may encroach upon an individual's fundamental right to participate in our democracy is not taken lightly. The Court is sympathetic to the plight of individual voters who were unable to register in time to vote in the general election, and had this action been filed within a reasonable time before the voter registration deadline, a different outcome would have likely resulted. The Court also observes the possibility that the Secretary set the deadlines this year without first consulting a holiday calendar, and that if she had exercised her discretion (or her rulemaking authority) from the onset, the predicament faced here could have been avoided. However, polling lists have been disseminated, early ballots have been cast, and polls open in a matter of days. Even if the

33

inequity imposed on the administration of this case were ignored, it would not alter the fact that the Committees' inaction compromised the ability to realistically vindicate the voting rights for some without endangering the exercise of that right by others. Accordingly,

**IT IS ORDERED**:

1.     That Plaintiffs' Motion to Strike (Doc. 31) is **denied**;

2.     That Plaintiffs' Motion to Supplement (Doc. 34) is **granted**;

3.     That the Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2) is **denied**;

4.     That the Motion to Modify the Relief Sought (Doc. 37) is **denied as moot**;

5.     That Plaintiffs' request for declaratory judgment, permanent injunction is **denied**; and

6.     That the Clerk of Court shall enter **judgment** accordingly and **terminate** this action.

Dated this 3rd day of November, 2016.

Honorable Steven P. Logan
United States District Judge